**Arthur H. NORDSTROM**
v.
**The UNITED STATES.**
No. 92–60.

United States Court of Claims.
March 12, 1965.

---

John I. Heise, Jr., Washington, D. C., for plaintiff.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

Arthur Nordstrom, born on March 15, 1897, has had a long career both in the federal civil service and in the military. In 1918 he began as a civil service employee with the Army; after a short period of active military duty during World War I, he returned to civilian life with the Army until 1921 when he transferred to the General Accounting Office, where he remained until 1942. Early in that year, he joined the Ordnance Corps as a civilian auditor. On April 6, 1942, he was furloughed by the War Department to active military duty. At that time he had had some 24 years of federal government service. He continued on active military duty through 1956 and until February or March 1957. In 1956–57 he was serving at an Army headquarters in Italy.

On July 31, 1956, Congress enacted the Civil Service Retirement Act Amendments of 1956, Public Law 854 of the 84th Congress, 70 Stat. 736, 743, 5 U.S.C. § 2251 et seq. For this plaintiff, the new statute (which was to be effective as of October 1, 1956) made two especially important changes in civil service retirement law. Previously, under Section 4 of the Civil Service Retirement Act of 1930, 46 Stat. 471, 472, as amended, the basic "five highest years" pay useable to compute the annuity of a civil service annuitant could include his military pay earned in the armed forces; the 1956 legislation expressly excluded military pay.[1] The other relevant change was a new provision (Section 3(d)) that a federal employee (like plaintiff) who left his position to enter the military service during a war or national emergency "shall not be considered as retaining his civilian position beyond December 31, 1956, or the expiration of five years of such military service, whichever is later." 70 Stat. 736, 746, 5 U.S.C. § 2253(d).

Plaintiff would be significantly affected by both of these new requirements. If he retired from the civil service after October 1, 1956, he could not use his military compensation in making up the average of the highest five years of federal pay which is the normal base for determining civil service annuities; since he had left civilian life in 1942 and by 1956 had risen to the rank of colonel in the Army, his "highest five" years of pay would obviously be military. In addition, if he allowed himself to be automatically separated after December 31, 1956, from his civilian position (from which he was on military leave) before retiring, the new provision of Section 3(d), supra, would apparently prevent his annuity from taking account of the statutory increases in the pay of the civilian job which he had left in 1942. This would

---

1. Section 1(d) of the 1956 Act provides:
 "The term 'basic salary' shall *not* include bonuses, allowances, overtime pay, *military pay*, or salary, pay, or compensation given in addition to the base pay of the position as fixed by law or regulation: *Provided*, That for employees paid on a fee basis, the maximum amount of basic salary which may be used shall be $10,000 per annum. * * *" (Emphasis added.) 70 Stat. 736, 743, 5 U.S.C. § 2251(d).

be the result of the Civil Service Commission's rule that a federal employee furloughed to military duty cannot use such statutory increases for retirement purposes unless he is actually restored to his civilian job; after December 31, 1956, Colonel Nordstrom would no longer have a civilian position to which he could be restored.

Since he was in Italy and out of touch with current legislation of this type, plaintiff did not learn about the 1956 retirement law until the autumn of 1956 when he happened to see a reference to it in the "Stars and Stripes." He unsuccessfully sought advice within his own unit as to the impact of the new statute, and then began to communicate, directly and through Army officials, with federal agencies in the United States. At first, he proposed to retire from civilian service on March 31, 1957, when he reached age 60, and to use his highest five years of military pay as the foundation for his annuity. When he learned from the Ordnance Corps, toward the end of November 1956, that under the new Act he would lose his civilian job at the end of the year, plaintiff wrote on December 18, 1956, to the Civil Service Commission, enclosing a completed retirement form, and "request[ing] that consideration be given to setting the effective date of my retirement as of 31 December 1956, since under Public Law 854, 84th Congress, an employee will not be considered as retaining a civilian position beyond 31 December 1956 for retirement purposes." This request was received by the Commission on December 21st. Plaintiff's civilian employer, Ordnance, had told him to deal directly with the Commission.

The only action taken by the Civil Service Commission was to send plaintiff, on January 7, 1957, another retirement form as well as the information that his annuity could no longer be computed on his military pay. There followed a series of further communications between Nordstrom and various federal agencies (particularly the Commission), both before and after his return to the country. He left military service and came back in late February or early March 1957. In February, a GS–13 position in the civil service had been offered to him (while he was still in Italy) by the Department of the Army, but he did not again take a federal civilian post.

In the end, the Commission told plaintiff that under the law his retirement could be made effective on either of two dates. One was April 1, 1952, the beginning of the first month following the time by which the three main operative factors for an annuity had all coalesced, i. e. (a) plaintiff's becoming 55 years of age (March 15, 1952);[2] (b) his completion of 30 years of creditable service (sometime in 1947);[3] and (c) the cessation of his civilian salary from the War Department (June 1942).[4] If he selected April 1952, his annuity could be based on his highest five years of military pay prior to that date. The other choice was January 1, 1957, which was the first day of the month following December 31, 1956, the time of plaintiff's automatic separation from his civilian position according to the Civil Service Retirement Act Amendments of 1956, Section 3(d), supra. Under this option, he was told, the annuity could not be based on his military pay but solely on the highest five years of his civilian salary prior to April 1942; increases since that time in the compensation of the position would not be counted.

2. Plaintiff could not voluntarily retire from the Civil Service until he attained age 55. An annuity at that age, on a voluntary retirement, would be a reduced one. See 5 U.S.C. § 2256(b).

3. For voluntary retirement at age 55, 30 years of creditable service was and is necessary.

4. The Civil Service Retirement Act authorizes an annuity to commence on the first day of the month after separation from the service or on the first day of the month after salary ceases. See Section 14(b), 62 Stat. 58 and 70 Stat. 757, now 5 U.S.C. § 2264(b). Plaintiff's pay from the War Department (including his accrued annual leave) stopped on June 20, 1942.

Plaintiff elected the April 1, 1952 date —under protest—and exhausted his remedies within the Civil Service Commission. He now sues for a higher annuity than that granted him by the administrators. He presents two alternatives, asking the annuity which affords him the greater monetary compensation. Since we do not know which of plaintiff's proposals is more favorable to him, we shall have to consider both.

██ One contention, which we cannot accept, is that plaintiff is entitled to an annuity computed on the basis of his highest five years of military salary prior to October 1, 1956 (or prior to his actual retirement in March 1957). His theory is that, if he had retired before October 1, 1956, he would have been able, under the old Retirement Act, to use his military pay as the base, and that the Army and Civil Service Commission were legally remiss in not giving him timely information of that possibility. We see no such breach of legal duty, on the part of these agencies, which could have misled plaintiff into by-passing the opportunity to retire from his civilian position before October 1, 1956. The new statute was passed on July 31st. There was no legal requirement at that time that the Federal Government tell plaintiff (or others similarly situated) about the impending changes in retirement law which would take effect on October 1st. Normally, the Government does not have any such responsibility, in the absence of mandatory instructions from Congress or the President. See Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Aflague et al. (Forster, Plaintiff No. 13, etc.) v. United States, 309 F.2d 753, 755–756, 159 Ct.Cl. 80, 86–87 (1962); Cole v. Railroad Retirement Board, 289 F.2d 65, 68 (C.A.8, 1961). The 1956 Act did not contain

such a directive and the President did not issue one. An Army Circular (Army Civilian Personnel Circular No. 25), dated August 22, 1956, did refer to the new provision requiring civilian employees furloughed to military service to be separated from their civilian positions on December 31, 1956, adding that the "above provision should be brought to the attention of employees who have been separated for and are currently serving on active military duty." But so far as we are informed, there was no comparable directive as to the new provision excluding the use of military pay after October 1, 1956. Late in October, the Civil Service Commission issued an amendment to the Federal Personnel Manual which declared that all agencies of the Federal Government were responsible for "counseling employees as to their rights and obligations under the Act." This was almost a month after the bar to the use of military pay had fallen, and the Commission's regulations could not have affected plaintiff's course of action as to retirement before that earlier cut-off. In any event, this general Commission instruction seems more directory than a mandatory requirement from which specific legal rights can flow. See Aflague et al. v. United States, supra; Khuri v. United States, 154 Ct.Cl. 58, 64, cert. denied, 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961). There was, in short, no breach of duty by the defendant from which plaintiff can draw a right to have his annuity computed on the basis of his highest five years of military pay up to 1956 or 1957.[5]

 In support of his demand for an annuity founded on his latter-day military pay, plaintiff urges us to invalidate the provision of the 1956 Retirement Act which barred the use of military compensation for future annuities.

5. Another obstacle to this claim for an annuity based on military pay is that plaintiff's retirement cannot, under the Retirement Act, be made retroactive to September 30, 1956 (as plaintiff asks). The law restricts the beginning of an annuity (for an eligible claimant) to the first month following his separation or the cessation of his civilian salary. See footnote 4, supra. There is no indication in this record that plaintiff would or could have retired prior to October 1, 1956; and his civilian salary had long ago stopped.

The argument is that he had, in July 1956, a property right, vested against legislative change, in an annuity founded on his Army salary because, prior to the passage of the new Act, he was already able to retire voluntarily (as an employee over 55 with more than 30 years of service). But it is settled that, if there can be any such vested rights at all in a federal civilian service annuity, they do not accrue unless the employee is fully entitled to immediate payment under the pre-existing law. See Lawrenson v. United States, 153 F.Supp. 790, 791–792, 139 Ct.Cl. 370, 372–373 (1957); Prentiss v. United States, 117 F.Supp. 200, 204–205, 126 Ct.Cl. 521, 525–526 (1953); Rafferty v. United States, 210 F.2d 934, 936–937 (C.A.3, 1954). Plaintiff was not so entitled (except with respect to the lesser annuity the Commission gave him as of 1952) before the new Act was passed in 1956. He had not been separated, or sought to be separated, from the civilian service—and that event was a necessary prerequisite to the type of annuity he seeks.

■ Mr. Nordstrom's other claim, with which we can agree, is for an annuity based on all the pay increments accruing, up to December 31, 1956, to the civilian position he left for the Army in 1942. The only bar to this relief raised by the defendant is that plaintiff was not restored to the civilian service before he was automatically separated at the end of 1956, and therefore he cannot take advantage of the statutory pay increases which had been granted by Congress since 1942.[6] The Civil Service Commission and the General Accounting Office have taken the position that a federal employee who is on leave to the military cannot avail himself of these increments for retirement purposes unless he is actually restored to a civilian job before he retires. This was the ruling of both agencies on plaintiff's plea for redress. Whatever merit this rule may have in other situations, we think that it has no proper application to a case like this.[7]

Plaintiff made every reasonable effort, in the circumstances, to seek restoration before the crucial end of the year. As soon as he found out about the 1956 legislation, he indicated his interest in protecting his rights. In the middle of December, he specifically requested the Commission to set his retirement date "as of 31 December 1956" because he feared the consequences of letting the year go by. It was not his fault that the request was ignored. Nor would it be sensible to insist—in view of plaintiff's location in Italy and the failure of anyone to tell him earlier about the new statute [8]—that he should have made his

6. It is agreed that, before December 31, 1956, plaintiff was still on the civil service rolls (under the Retirement Act of 1930, as amended by the Act of Nov. 9, 1945, 59 Stat. 577, and Section 3(d) of the 1956 Act). He had reached age 55 in 1952, and had over 30 years of creditable service (which includes both military and civilian employment). Anytime in 1956 after the passage of the new Act, up to December 31st, he was eligible for civil service retirement with a reduced annuity. See footnotes 2–4, supra.

7. As the appropriate regulations are worded, they do not *require* the interpretation that actual restoration is necessary in any case. See Department of the Army Civilian Personnel Reg. R 5.3 (1957 ed.) and the Civil Service Commission regulation in the Federal Personnel Manual R–5–12 (Oct. 29, 1956). Nor, as shown below, is there now any statute so requiring. The stand of the Commission and the Comptroller General rests on their own debatable administrative interpretation of the regulations and legislation. However, we do not reach or pass upon the propriety of this administrative policy in circumstances other than those of plaintiff and employees similarly situated.

8. Army Civilian Personnel Circular No. 25, supra, specifically provided that the provision requiring separation by December 31st "should be brought to the attention of employees" then serving on active military duty. Plaintiff did not learn about this part of the statute until December 1956 when he received a letter, dated November 27, 1956, from the Office of the Chief of Ordnance. Whether or not the Army breached a legal duty to plaintiff by this belated proffer of information, the circumstances excuse his failure to take action at an earlier time.

application some weeks or months before, or that he should have pursued his request with the Department of the Army rather than the Commission. We have been given no reason for thinking that the Federal Government could not have processed the request in time to save plaintiff's valuable rights, which both the Commission and the Army thought would be cut off on December 31st. His case (and perhaps that of others) was clearly an emergency which should have been marked for the quickest first-aid. Plaintiff did all that he could reasonably be expected to do, but the defendant did not.

The Government argues that plaintiff has not shown that he would have been restored in time, even if every effort had been made to help him. The fact is, however, that plaintiff was actually offered an appropriate position in the Department of the Army when he sought one in February 1957; and he was legally entitled to restoration to his civilian post under Section 9(b) of the Universal Military Training and Service Act, 62 Stat. 604, 614, 50 U.S.C. App. § 459(b). Moreover, plaintiff swears in affidavits that "by direct inquiry made subsequent to his return to the continental United States in 1957, he has ascertained that the GS–13 position" he was tendered in February "plus at least one other position with the Department of the Army, and a position with the General Accounting Office were available for him during 1956 as well as in 1957," and that "at all times from late in 1956 through 1957 there was available for plaintiff a position at grade GS–13, and in one case even GS–14, in the Ordnance Corps and Office of the Deputy Chief for Logistics, Department of the Army." Defendant attacks these assertions as unsupported and inadmissible, but indicates no ground for disagreeing with the facts affirmed. We accept plaintiff's undisputed and specific declaration of what he himself ascer-

tained. In the absence of any contradictory assertion or evidence, we also accept plaintiff's statement that he could and would have been released from his Army duty in time to be restored to a civil service job by the end of 1956.[9] His headquarters in Italy was aiding his request for civilian retirement, and he was being kept in Italy only because he wished to serve there until his 60th birthday (March 15, 1957).

The requirement of actual restoration is inapplicable where the employee-soldier cannot be restored through no fault of his own. In 1945, Congress amended the Retirement Act to provide (59 Stat. 577):

> "No officer or employee to whom this Act applies who during the period of any war, or of any national emergency as proclaimed by the President or declared by the Congress, has left or leaves his position to enter the armed forces of the United States shall be considered as separated from such position for the purposes of this Act by reason of his service with the armed forces of the United States. * * *"

The same declaration was carried over into Section 3(d) of the 1956 Act, 70 Stat. 746, 5 U.S.C. § 2253(d). This legislation says nothing about actual restoration; on the contrary, it implies on its face (as the Comptroller General admits) that the employee-soldier continues on the civilian rolls for all retirement purposes and need not be restored in order to obtain full retirement benefits. It is clear from the legislative history of the 1945 Act that just that result was intended by Congress for the two classes of veterans particularly mentioned during the legislative consideration: (1) employees who become disabled in military service and therefore cannot be restored to their civilian jobs, and (2) employees who are over-age on their

---

9. Plaintiff's affidavit swears that "he could have obtained immediate release to inactive military status and simultaneous restoration to the civilian position. There would have been no delay in such processing by reason of his overseas assignment. In fact an immediate restoration to a civilian position in the Department of the Army could have been effected in Europe in 1956."

release from military service and could retire immediately on restoration. Prior to January 1945, the Civil Service Commission had not demanded restoration for any employee-soldier as a prerequisite to granting him retirement benefits, but the Comptroller General had overruled this position on January 30, 1945, and decided that restoration was a mandatory precondition. 24 Comp.Gen. 573 (1945); see, also, 21 Comp.Gen. 403 (1941). The Commission then proposed the bill which became the 1945 Act, stressing the two general categories of employees whose retirement benefits were directly affected by the decision of the General Accounting Office. The Committee reports echoed the Commission's concern for these classes. H.Rept.No.757, 79th Cong., 1st Sess.; Sen.Rept.No.564, 79th Cong., 1st Sess.

Because the Commission and the Congressional committees referred solely to these two groups, defendant argues that, despite the broad and unqualified wording of the 1945 Act, only those exact classes are covered. It is never easy to demonstrate that an enactment which is all-inclusive in its terms must nonetheless be given a very restricted application, and the defendant has not convinced us that the compass of this general amendment should be so severely narrowed. We think that the particular types cited in the Commission's letter to the Congress and in the reports were but illustrations of a more general category to which all the same considerations apply. That more universal grouping consists of employee-soldiers whose restoration is prevented through no fault of their own. All members of that class, not merely those disabled or over-age, deserve similar and equal treatment. At the least, the 1945 Act (and its successor) should be read to delete any requirement of actual restoration for all those who could not reasonably avoid an existing impediment to their reinstatement. The liberalizing aim of the statute as well as the breadth of its language call for that equitable interpretation. Cf. Sonnabend v. United States, 175 F.Supp. 150, 153, 146 Ct.Cl. 622, 628 (1959).

Plaintiff's case, as we have already suggested, falls precisely into this pigeonhole. The 1945 statute therefore relieves him from the requirement of actual restoration. Satisfying as he does all the other pre-conditions, he stands fully entitled to be treated as if he had been separated, on December 31, 1956, after restoration. His annuity, commencing with the first of January 1957, can and should be based on all the pay increments accruing to the civilian position from which he went to the Army in 1942.

The defendant's cross-motion for summary judgment is denied. Plaintiff's motion is granted. He is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined under Rule 47(c). That amount will, of course, give the defendant credit for payments made under the annuity already awarded plaintiff by the Civil Service Commission.