Per Curiam :
This case was referred to Chief Trial Commissioner Marion T. Bennett for determination under Rule 47(c) of the amount of recovery to be made to plaintiff. On September 28, 1966, the trial commissioner filed an opinion, findings of fact and recommendation for conclusion of law pursuant to this reference. On October 24, 1966, defendant filed a notice of intention to except to the commissioner’s report but thereafter by letter of November 8, 1966, advised the court that defendant has decided not to except. Plaintiff has filed no exceptions and the time for so filing pursuant to the Eules of the court has expired. The case has been submitted to the court without oral argument. Since the court agrees with the trial commissioner’s findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is entitled to an annuity effective January 1, 1957, computed on the basis of a CAF-12 (now GS-12) from February 24, 1942, until November 24,1942, and then on the basis of a CAF-13 from November 24, 1942, through December 31, 1956, and judgment will be entered for plaintiff in an amount computed on that basis when the amount is supplied to the court by the Civil Service Commission in accordance with this opinion.
OPINION OE COMMISSIONER*
Bennett, Chief Commissioner: Plaintiff originally brought suit to recover his Civil Service retirement annuity beginning September 30, 1956. In an opinion by the court issued on March 12, 1965, plaintiff’s motion for summary judgment was granted, defendant’s cross-motion was denied, and judgment for the plaintiff was entered for an annuity commencing January 1, 1957, “based on all the pay increments accruing to the civilian position from which he went to the Army in 1942.” Nordstrom v. United States, 169 Ct. Cl. 632, 643, 342 F. 2d 55, 62 (1965). The exact amount of recovery was to be determined under Eule 47 (c) with credit being given to defendant for payments made under the *822 annuity already awarded plaintiff by the Civil Service Commission.
Pursuant to plaintiff’s motion for call upon the Civil Service Commission, the Commission filed a reply providing a retirement annuity computed on the basis of all salary increments accruing to grade CAF-12 (now GS-12) from June 20,1942, the date on which plaintiff was furloughed by the War Department to active military duty, to December 31, 1956. Plaintiff disputes this computation, contending that his position as a civilian, that of a Zone Chief Supervising Auditor, was reallocated or reclassified upward to grade CAF-13 (now GS-13) soon after he entered into the military and that his annuity should be computed as if he too had been so reclassified. Defendant would have the court accept the computation of the Commission on the grounds that there never was such a reallocation.
Plaintiff has had a long career both in the federal civil service and in the military. In 1921, he began serving in the General Accounting Office, and by 1941 he had reached the grade and salary level of CAF-11. Because of a lack of trained personnel in the War Department, plaintiff was temporarily transferred to the Chief of Ordnance, War Department for 1 year. This transfer was subsequently extended and on February 24,1942, plaintiff was permanently appointed Zone Chief Supervising Auditor in the Fiscal and Legal Division of the Ordnance Corps with a grade and salary of CAF-12. Briefly, plaintiff’s duties in this position involved visiting Government-owned, contractor-operated munition plants around the country; examining production, security, records, and payment procedures; and then reporting what he had found to the Chief of Ordnance. By all accounts, he performed these duties quite capably. Including plaintiff, there were six to eight individuals performing this function.
On June 20,1942, plaintiff was furloughed to active military duty. He nevertheless continued to perform the duties of a Zone Chief Supervising Auditor, but as a military person, until the late summer or early autumn of 1942 when he left the Office of Chief of Ordnance. Mr. Nordstrom re *823 mained on active military duty until February or March 1957.
Under the Retirement Act of 1930, as amended by the Act of November 9, 1945, 59 Stat. 577, 5 U.S.C. § 2253(d), any civil service employee who leaves his position to enter the military during a time of war or national emergency shall not be considered as separated from his civilian position for purposes of his retirement annuity. The purpose of this amendment is clear: to protect an employee from being disadvantaged by reason of his serving his country. Effec-tuation of this purpose requires that any pay increments or any upward job reclassifications that evolve to the temporarily vacated civilian position should be credited to the employee for purposes of computing his retirement annuity.
The issue in the instant case is whether the position of Zone Chief Supervising Auditor was in fact reallocated or reclassified upward from CAF-12 to CAF-13 or whether there were only individual promotions. The facts indicate that the former took place although not all of the positions were reclassified at the same time. During 1942, jobs with the Government were constantly being upgraded in an effort to attract qualified people. With two exceptions, every Zone Chief Supervising Auditor, at the time of plaintiff’s furlough into the military, was upgraded to a CAF-13 within months, and as to these two individuals, they were soon let go because of poor personal and security records. Furthermore, every person who was subsequently assigned to the position of Zone Chief Supervising Auditor was so designated at the level of CAF-13. Most important in indicating that what transpired was a job reclassification is that the duties and responsibilities of a Zone Chief Supervising Auditor remained the same after the personnel became CAF-13. According to the uncontradicted testimony of plaintiff’s witnesses, there was not the slightest change in their job duties after the upgrading to CAF-13. The title of the position was, however, changed to “Auditor.”
Defendant raises two main arguments in favor of treating this as a simple promotion. First, it stresses that the various individuals received their CAF-13 grades at different times rather than simultaneously. On the face of it, this aspect *824 seems to negate an across-the-board reclassification. However, these events must be dealt with in the context in which they occurred — in the early years of the war. As plaintiff’s superior testified, there was great confusion during 1942 and the personnel offices did not always act uniformly as to several requests submitted at the same time. Also, the important fact is not that everyone was not given CAF-13’s simultaneously but that everyone (with the two exceptions previously referred to) soon did receive a CAF-13. To say that the awarding of a CAF-13 to every employee retained in a governmental section or hired for it, all within a short time, is necessarily the result of individual promotions, is to stretch coincidence a bit beyond credulity.
Secondly, defendant has pointed to the lack of information in the Army personnel folders of plaintiff and of several other individuals who were Zone Chief Supervising Auditors at the time of plaintiff’s furlough into the military. To that end, defendant introduced the statement under seal of Walter F. Meyer, Chief of the Procedures and Eegulation Division, Civilian Personnel Directorate, Office of the Deputy Chief of Staff for Personnel. It states that there are no records whatsoever of what happened to plaintiff’s position when he entered into active military duty, who filled his position as a replacement, or what disposition was made of the duties assigned to his position. Defendant contends that because of this lack of information, plaintiff has failed to sustain his burden of showing there was a reclassification.
This attempt of defendant to pull itself up by its own lack of records is a bootstrap argument. Defendant is simply saying that because defendant failed to keep adequate records, plaintiff’s action must fail. But it would be inequitable to penalize plaintiff for lapses in defendant’s recordkeeping, especially when plaintiff is in no way responsible for this failure. (7/., Nordstrom, supra. Furthermore, plaintiff has produced two witnesses, Woodrow W. Storey and Watson S. Wheat, associates of plaintiff in Ordnance at the time, to provide just the information these records would have contained. Since this testimony was uncontradicted by direct evidence of the defendant, it must stand in place of the missing records. And it is this testimony that leads *825 to the conclusion that there was a general reclassification rather than individual promotions.[1]
Defendant also argues that under Tierney v. United States, 168 Ct. Cl. 77 (1964), and prior cases, the court is without power to order that plaintiff’s annuity be computed on the level of CAF-13 rather than CAF-12. See also, e.g., Dvorkin v. United States, 101 Ct. Cl. 296 (1944), cert. denied, 323 U.S. 730; Coleman v. United States, 100 Ct. Cl. 41 (1943). But the instant case is clearly distinguishable. In Tierney, plaintiff sought to have the court order that he be promoted to a higher position which had been created by a reorganization. The court denied relief, holding that the power of appointment requires the exercise of discretion and that to grant relief would be to usurp an executive function.
In the instant case, no exercise of discretion is required. Plaintiff is not seeking a promotion — he is seeking the benefits incident to a reclassification, an automatic action which applied to everyone who was a Zone Chief Supervising Auditor in June 1942. To deny relief to the plaintiff would be to contravene the purpose of the Act of November 9,1945. Plaintiff would be worse off than the Zone Chief Supervising Auditors who did not enter the military in 1942 but stayed on in the Ordnance Corps in a civilian status.
Further support for the power of this court to award CAF-13 status to plaintiff as the basis for computing his retirement annuity can be found in cases arising under an analogous statute, section 9(b) of the Selective Service Act of 1948,[2] 62 Stat. 604, 615 (1948), 50 U.S.C. App. § 459(b) (1964). That statute guarantees to certain employees that if they leave their current position to enter into active military duty, upon discharge they will be restored “to such position or to a position of like seniority, status, and pay.” In cases arising under this statute, the courts have uniformly distinguished between changes and advancement in status that would have occurred automatically simply by virtue of *826 continued employment, such as in-grade pay increases or promotions due to seniority, as contrasted to promotions based not on automatic progression but on tbe exercise of discretion and dependent on fitness, ability, and diligence, and have granted relief only in the former instances. Jefferson v. Atlantic Coast Line R.R. Co., 303 F. 2d 522, 525 (5th Cir. 1962); McKinney v. Missouri-Kansas-Texas R.R. Co., 357 U.S. 265, 272 (1958); Special Service Co. v. Delaney, 172 F. 2d 16 (5th Cir. 1949); Kay v. General Cable Corp., 63 F. Supp. 791 (D.N.J. 1946). The reclassification of Zone Chief Supervising Auditor from CAF-12 to CAF-13 was, on the weight of the credible evidence, likewise an automatic progression and the proper sub] ect for judicial action. In no way is it a usurpation of a discretionary executive or administrative function. It is simply recognition of a fact that existed after the exercise of such function.
One other problem remains. For purposes of computing the annuity, the exact date on which plaintiff would have been elevated to CAF-13 must be ascertained. As has been indicated previously, however, the reclassification did not apply to all employees simultaneously but rather was accomplished over a matter of months. Plaintiff has suggested that the date of November 24, 1942, be used, the date of reclassification of one Watson S. Wheat who assumed some of plaintiff’s duties when he left the Ordnance Corps. Defendant has offered no contrary date and the record contains no possible alternative. Therefore, in the absence of any proof for a contrary date, November 24, 1942, will be used as the date of plaintiff’s reclassification. Plaintiff then is entitled to an annuity computed on the basis of a CAF-12 from February 24,1942, until November 24,1942, and then on the basis of a CAF-13 from that date through December 31, 1956.
FINDINGS on Fact
1. On March 12, 1965, the court issued a written opinion denying defendant’s cross-motion for summary judgment. The court granted plaintiff’s motion for summary judgment and awarded him a Civil Service retirement annuity com *827 mencing January 1, 1957, “based on all the pay increments accruing, up to December 31, 1956, to the civilian position he left for the Army in 1942.” The amount of recovery was to be determined under Kule 47 (c) with credit to be given to defendant for payments made under the annuity already awarded plaintiff by the Civil Service Commission.
2. On April 19, 1965, in response to plaintiff’s motion for call upon the Civil Service Commission, the Commission filed a reply with the clerk of the court setting forth a retirement annuity computed on the basis of all salary increments an cruing to grade CAF-12 (now GS-12) from June 20,1942, the date on which plaintiff was furloughed by the War Department to active military duty, through December 31,1956.
3. Defendant accepted the computation but plaintiff rejected it on the grounds that he was entitled to an annuity computed on the basis of all salary increments accruing to grade CAF-13 (now GS-13), since it is his contention that his former position was reallocated upward during his military furlough.
4. Plaintiff, who has a long career both in the federal civil service and in the military, served in the General Accounting Office from 1921 to 1941. In 1941 he had the grade and salary of CAF-11.
5. On January 7, 1941, the Comptroller General made plaintiff’s services available on a reimbursable basis to the Chief of Ordnance, War Department, for 1 year, effective January 16,1941.
6. On December 18,1941, the Secretary of War requested that plaintiff be allowed to serve for another year. The salary requested for plaintiff was $4,600 per annum, a figure comparable to CAF-12. The Comptroller General agreed to plaintiff’s transfer to the War Department at such grade as that agency wished to give him.
7. Plaintiff was given a permanent appointment as Zone Chief Supervising Auditor in the Fiscal Division of the Chief of Ordnance with a grade and salary of CAF-12 on February 24, 1942. Plaintiff’s duties included the inspection of munitions plants, their production, security, and payment procedures.
*828 8. According to the uncontradicted testimony of Woodrow W. Storey, plaintiff’s superior in the Ordnance Corps, plaintiff was the “top civilian” in the division, a “working leader” to whom everyone looked to get a job done. The evidence establishes that plaintiff’s work was eminently satisfactory to defendant.
9. On June 20, 1942, plaintiff was furloughed to active military duty. He continued on active military duty until February or March 195V.
10. In 1942, subsequent to plaintiff’s departure, the position of Zone Chief Supervising Auditor was reclassified upward from CAF-12 to CAF-13 and the position title was changed to Auditor. During this period, governmental jobs were constantly being upgraded. There were no changes in the duties or responsibilities of this job. All persons who later served in this position did so as CAF-13.
11. Although the reclassification did not affect all such auditors simultaneously, six or eight persons who held that post at the time of plaintiff’s furlough were shortly upgraded to CAF-13 but two other individuals who had poor personal and security records were not upgraded and were soon let go.
12. Watson S. Wheat, who held a position similar to plaintiff’s and who succeeded to some of his duties, was awarded CAF-13 reclassification on November 24, 1942.
13. There are now no written records of what happened to plaintiff’s position when he entered on active military duty, who filled his position as a replacement, or what disposition was made of all the duties assigned to his position. The confusion and pressure of the early days of World War II adversely affected military personnel recordkeeping.
14. The weight of the credible documentary evidence and testimony, including that of some of plaintiff’s co-workers in Ordnance, is that his position was reclassified to CAF-13, as other similar positions were in the same office, and that this reasonably can be said to have taken place on or about November 24,1942.
CONCLUSION op Law
Upon the foregoing findings of fact and opinion, which are adopted by the court and made a part of the judgment *829 herein, the court concludes as a matter of law that plaintiff is entitled to an annuity effective January 1,1957, computed on the basis of a CAF-12 (now GS-12) from February 24, 1942, until November 24, 1942, and then on the basis of a CAF-13 from November 24, 1942, through December 31, 1956, and judgment will be entered for plaintiff in an amount computed on that basis when the. amount is supplied to the court by the Civil Service Commission in accordance with the foregoing findings and opinion.
In accordance with the foregoing opinion of the court and the opinion of March 12, 1965, reported at 169 Ct. Cl. 632, 342 F. 2d 55, a memorandum report of the commissioner and a stipulation of the parties, it was ordered on February 20, 1967, that judgment for the plaintiff be entered for $26,728.

The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 47(c).

 Plaintiff also offered an explanation for this lack of records. Mr. Wheat, who was in charge of recordkeeping, testified that in the early days of the war, winning the war was paramount and recordkeeping secondary and often incomplete records were kept of personnel matters.

 Title of act was later changed to Universal Military Training and Service Act by Act of June 19, 1951.