Per Curiam
: This case comes before the court on plaintiff’s motion, filed October 25, 1978, pursuant to Eule 141 (b) that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge Philip E. Miller, filed September 6, 1973, pursuant to Eule 131(c), defendant having filed no opposition or notice of intention to except thereto. Upon consideration thereof and without oral argument, since the court agrees with the decision, as hereinafter set forth, it hereby grants plaintiff’s motion and affirms and adopts the decision as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered that plaintiff recover $78,809.44 in back pay, less $41,270.00 representing plaintiff’s outside earnings, less $1,750.62, representing reimbursement to the Government of the lump-sum leave payment made to plaintiff at the time of his separation, and less $5,436.74 to be credited to plaintiff’s Civil Service Eetirement Fund Account, with the remaining balance of $30,352.08 to be paid to plaintiff.
OPINION OP TRIAL JUDGE
Miller, Trial Judge: On May 12, 1972 the court decided that plaintiff’s removal from his position in the Internal Eevenue Service was improper and granted summary judgment in his favor, with the amount of back pay recovery to be determined under Eule 131 (c). Ciambelli v. United States, 198 Ct. Cl. 240 (1972). In determining the amount of plaintiff’s back pay, a number of matters were in dispute between the parties. All but one of these have now been resolved by stipulations, and there remains for resolution only the Civil Service grade level at which plaintiff’s compensation is to be computed. Accordingly the discussion which follows is pertinent only to that issue.
*683 Plaintiff was suspended by the IKS from Ms position as Assistant Chief, Audit Division, Newark, New Jersey, effective May 5, 1969, and was discharged from the Service effective June 2, 1969. Following the court’s decision in his favor, on May 19, 1972 plaintiff elected to retire from the Service. Plaintiff received neither salary nor other employee benefits from May 5,1969 until his retirement.
Prior to his dismissal plaintiff, a veterans preference eligible, had held the position of Assistant Chief, Audit Division, Newark, New Jersey, and had been employed by the IKS for approximately 28 years.
Two charges were brought against him. Charge I was “Association with Individual Believed to be Connected with Illegal Activities, in Violation of Section 19-12.31, Kules of Conduct for Internal Kevenue Service Employees (Kev. 10-63).” Charge II was “Failure to Seek Disqualification from Assignments Involving a Person with Whom You Had Social Kelationships, in Violation of Section 1942.83 of Kules of Conduct for Internal Kevenue Service Employees (Kev. 10-63).” Each was followed by several specifications. The court found that plaintiff’s dismissal under such charges and specifications was not supported by substantial evidence and was wrongful. Insofar as concerns Charge II, the court also found that defendant did not adduce any evidence that plaintiff violated Section 1942.83 of the Kules. (Ciambelli v. United States, 198 Ct. Cl. at 254.)
Plaintiff’s employment as Assistant Chief, Audit Division, Newark, was at the grade and pay of GS-14, Step 7. However, more than 6 months prior to plaintiff’s discharge, by letter of November 22,1968, Mr. K. H. Nash, Jr., District Director at Newark (plaintiff”s superior), wrote to the Regional Commissioner of IRS setting forth his determination that the position of Assistant Chief, Audit Division in his district met all the criteria set forth in Section 31 (26).43 of the IKS manual for grade GS-15. Accordingly he requested that the position be reclassified so that promotion of the incumbent could be effected.
On July 1, 1969, approximately 1 month after plaintiff’s dismissal, District Director Nash’s request for reclassification of plaintiff’s position was approved by the National *684 Office of the IES. There were no significant changes in the duties and responsibilities of the position as a result of the reclassification. Other than the charges filed against him there is no indication in the record that plaintiff’s job performance was not eminently satisfactory to defendant, and until his suspension and discharge plaintiff was the permanent incumbent in his position. Accordingly plaintiff claims that his back pay and other benefits should be computed on the assumption that he is entitled to grade GS-15 status from and after July 1, 1969.
Had no adverse action been taken against plaintiff and had he remained in his position as Assistant Chief of Audit, Newark, until July 1, 1969, there is no doubt that plaintiff would have been entitled to the promotion. The Federal PersoNNel MaNual of the Civil Service Commission (epm) provides (Chap. 335, § 4-3):
b. Promotion to positions upgraded without significant change in duties and responsibilities. An agency must provide for an exception to competitive promotion procedures to allow for the promotion of an incumbent of a position which has been upgraded without significant change in duties and responsibilities on the basis of either the issuance of a new classification standard or the correction of a classification error. If the incumbent meets the legal and qualification requirements for the higher grade, he must be promoted noncompeti-tively unless removed from the position by appropriate personnel action. (See epm supplement 752-1.)
The applicable statute, 5 U.S.C. § 5596, provides in pertinent part:
§ 5596 [Added by Pub. L. 90-83, § 1 (34) (C), Sept. 11, 1967, 81 Stat. 201]. Back pay due to unjustified personnel action
«£• «£»
(b) An employee of an agency who, on the basis of an administrative determination or a timely appeal, is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action that has resulted in the with *685 drawal or reduction of all or a part of the pay, allowances, or differentials of the employee—
(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; and
(2) for all purposes, is deemed to have performed service for the agency during that period, * * *
(c) The Civil Service Commission shall prescribe regulations to carry out this section. * * *
The Senate Committee Eeport on the Back Pay Act of 1966,[1] the predecessor of this section (S. Rep. No. 1062, 89th Cong., 2d Sess. (1966), 2 U.S. CoNG. & Adm. News 2097 (1966)), described the purpose of the enactment as that of liberalizing the preexisting law, which followed—
* * * the basic principle * * * that an employee is entitled to be made whole whenever an erroneous personnel action which has terminated or reduced his compensation is corrected by appropriate authority. * * *
It stated that the enactment would—
* * * liberalize the law by allowing credit for pay increases and accumulation of annual leave which otherwise would have accrued. It puts the employee in the same position he would have been in had the unjustified or erroneous personnel action not taken place. * * *
The Report also quoted with evident approval a letter from the Chairman of the Civil Service Commission to the Committee, which stated (S. Rep. No. 1062, supra, 2 U.S. Cong. & Adm. News 2100):
* * * nor would [the bill] restrict or define the nature of corrective actions, but it would assure that any employee who appeals an unjustified or unwarranted personnel action under the procedures available to him, and is successful, would be made whole for the losses in pay and benefits he sustained because of the wrongful action. * * *
*686 Pursuant to its authority under Section 5596(c), the Civil Service Commission has adopted regulations which provide in part (5 c.f.e.) :
§ 550.804 Corrective action.
(a) When an appropriate authority corrects an unjustified or unwarranted personnel action, the agency shall recompute for the period covered by the corrective action the pay, allowances, differentials, and leave account * * * of the employee as if the unjustified or unwarranted personnel action had not occurred and the employee shall be deemed for all purposes to have rendered service in the agency for the period covered by the corrective action. * * *
(b) In recomputing the pay, allowances, differentials, and leave account of an employee under paragraph (a) of this section, the agency shall include the following:
‡ ‡ ‡
(7) Any other changes which would affect the amount of pay, allowances, differentials or leave which the employee would have earned had it not been for the unjustified or unwarranted personnel action.
Even without the aid of the Back Pay Act of 1966, it has been held that a Government employee entitled to back pay or to other benefits of a position he previously held is likewise entitled to the additional pay and benefits attributable to the upgrading or reclassification of the position which he would have been entitled to receive had he not been transferred. Vasey v. United States, 128 Ct. Cl. 754, 756 (1954) ; Nordstrom v. United States, 177 Ct. Cl. 818, 825-826 (1966). In the light of the liberal language of Section 5596, the broadly expressed purpose in its legislative history and the Civil Service regulation thereunder, the proposition would seem undeniable.
Indeed, in its brief defendant concedes that under the applicable statute and regulations plaintiff is “entitled to the benefit [of] such a promotion if he would have been the incumbent of the position and therefore automatically promoted had it not been for the wrongful separation.”
Defendant’s argument for resisting the promotion is not based on any additional evidence of wrongdoing or other *687 actions by plaintiff. Defendant contends that, on the basis of the evidence already adduced and referred to in the court’s opinion, had the IES not discharged plaintiff it would have invoked the lesser sanction of reassigning him for the good of the Service. It therefore contends that plaintiff had not established that but for his wrongful separation from the Service on June 2,1969, he would still have been the incumbent of the position on July 1, 1969 when it was upgraded.
The Back Pay Act may not fairly be construed to permit foisting upon the plaintiff the well-nigh insuperable burden of negativing any other contingent actions the defendant might otherwise have taken had it not taken the erroneous action it did. Section 5596 entitles a wrongfully dismissed employee to the pay he “normally would have earned” during the period the action was in effect and “for all purposes, [he] is deemed to have performed services for the agency during that period.” The agency having been responsible for the wrongful dismissal, the statute requires the defendant to make the employee whole as if he had never been excluded. It does not say that the wronged employee has merely opened the door to a vestibule and must continue to carry the burden of pushing open additional doors never in fact closed before he is restored in. Cf. Seebach v. United States, 182 Ct. Cl. 342, 348-349 (1968).
A greater difficulty with defendant’s argument is that on the record in this case it would likewise have been improper to reassign plaintiff to any position which would have precluded his promotion. Fpm Supplement, 752-1, AdveRSE ActioNs bv Agencies, Sec. Sl-4, provides:
b. Seductions in rank covered by part 752. The following are examples of disciplinary and nondisciplinary reductions in rank covered by part 752.
ifi íji ❖
(2) Eeassignment from a position which has been determined to be worth a higher grade, either on the basis of a new classification standard or as the result of correction of an original error, when the incumbent meets the legal requirements and qualifications standards for promotion to the higher grade. The incumbent of a position is entitled to promotion to the grade deter *688 mined appropriate for the work he has been performing, if he is eligible for promotion, in two specific circumstances : (i) when issuance of a new classification standard shows that the work is actually of a higher grade and (ii) when error in classification has deprived him of the proper grade. * * * His assignment to a position in a grade below the proper grade of his position is a reduction in ranlc whether or not the upgrading, decision has been put into effect by official classification action at the time of the assignment. The employee may be reduced in rank in this situation only for reasons unrelated to the upgrading decision — for reasons, that is, which would support a reduction in rank in any event, whether or not his position was being upgraded. [Emphasis supplied.]
Both FPM SupblemeNT 752-1 (Sec. Sl-1) and 5 U.S.C. § 7511 provide that a reduction in rank is an “adverse action” within the meaning of 5 U.S.C. § 7512. Under § 7512 (a), “An agency may take adverse action against a preference eligible employee, * * * only for such cause as will promote the efficiency of the service.” Accordingly it is clear that any reassignment of the plaintiff which would have barred him from the benefits of the promotion attributable to the reclassification of his position would have been an adverse action which could only have been justified by the statutory cause. This would have been true whether it took place before or after July 1, 1969, when the reclassification was officially put into effect, since the position was of a grade 15 caliber at all pertinent times and there were no significant changes in duties and responsibilities between the time he was first charged with misconduct and July 1,1969.
Since there was no substantial evidence to support the charges when used as grounds for plaintiff’s dismissal, the same charges are equally insufficient to support his demotion. Moreover, the court’s decision on liability is the law of the case with respect to any adverse action on the same charges which might invoke a sanction less severe than dismissal. See Gearinger v. United States, 188 Ct. Cl. 512, 517, 412 F. 2d 862, 865 (1969). The adverse action set forth in the original notice to plaintiff of April 23, 1969 was “to remove you from the Service or otherwise discipline you.” This was broad enough to authorize either discharge or the *689 reduction in rank for which, defendant now contends, and the IES could have invoked the lesser sanction if the facts warranted it. Collins v. United States, 145 Ct. Cl. 382 (1959), cert. denied 374 U.S. 857 (1963). At no time before the Civil Service 'Commission or before this court in the main proceeding did defendant urge that if the facts did not justify dismissal they could warrant demotion. The contention that the same facts support back pay at a lesser grade than that to which plaintiff would otherwise be entitled is in substance an effort to use the proceeding for the determination of the amount of the recovery as an untimely petition for rehearing.
Finally, if during June 1969, irrespective of plaintiff’s culpability defendant would have reassigned plaintiff laterally to a position of assistant chief of audit at a different location, it would have necessitated reassignment to another grade GS-15 position at the new location. As FPM Supplement 752-1, supra, makes clear the date of the official reclassification action upgrading an incumbent’s position is not determinative of the incumbent’s proper grade for purposes of whether or not his reassignment is a reduction in rank.
Plaintiff is therefore entitled to back pay computed at grade GS-14 from May 5 to June 30, 1969, and at grade GS-15 from July 1,1969 to May 19,1972.
EINDINGS OE PACT
1. On May 12, 1972, the court decided that plaintiff’s dismissal and removal from his position in the Internal Eevenue Service, under the charges and specifications made against him “was not supported by substantial evidence and was wrongful.” It accordingly granted plaintiff’s motion for summary judgment and entered judgment for plaintiff with the amount of recovery to be determined under Rule 131(c), (Ciambelli v. United States, 198 Ct. Cl. 240 (1972)).
2. Incident to the determination of the amount of the recovery a number of matters were in dispute between the parties. All but one of these have now been resolved by stipulation. There remains for resolution only the Civil Serv *690 ice grade level at which, plaintiff’s compensation is to be computed, under the circumstances set forth hereinafter.
3. Plaintiff is a veteran preference eligible. Prior to his discharge on June 2, 1969, he was employed by the Internal Eevenue Service as Assistant Chief, Audit Division, Newark, New Jersey at the grade and pay of GS-14, Step T.
4. More than 6 months prior to plaintiff’s discharge, by letter of November 22,1968, plaintiff’s supervisor, Mr. E. H. Nash, Jr., District Director for Newark, New Jersey, had written to the Eegional Commissioner stating his determination that the position of assistant audit division chief in his district (plaintiff’s position) met all the criteria set forth in Sec. 31 (26) .43 of the INTERNAL Eevenue Service Manual for grade GS-15. Accordingly he requested that the position be reclassified to grade GS-15 so that promotion of the incumbent could be effected.
5. Eegional Commissioner Barron’s letter apprising plaintiff of proposed adverse action and the charges and specifications against him (quoted in Ciambelli v. United States, supra, 198 Ct. Cl. at 244-246) was dated April 23, 1969. It stated that it was issued in accordance with Part 752 of the Federal Personnel Manual, and that it was proposed “to remove you from the Service or otherwise discipline you”.
6. Plaintiff was suspended by the IES from his position as Assistant Chief, Audit Division, Newark, New Jersey, effective May 5, 1969, and was discharged from the Service effective June 2, 1969. Plaintiff received neither salary nor other employee benefits from May 5,1969 until May 19,1972, the date of his election to retire from the Service following this court’s decision in his favor on May 12,1972.
7. District Director Nash’s request of November 22, 1968, for reclassification of the position of Assistant Chief, Audit Division, Newark, was not approved by the National Office of the IES until July 1, 1969, approximately 1 month after plaintiff’s wrongful discharge. There were no significant changes in duties or responsibilities of the position as a result of the reclassification.
8. Until his suspension and discharge plaintiff was the permanent incumbent in the position of Assistant Chief, *691 Audit Division, Newark District. Other than the charges filed against him, there is no indication in the record that plaintiff’s job performance was not eminently satisfactory to defendant.
9. Computing plaintiff’s back pay on the basis of his having been upgraded from GS-14, Step 7 to GS-15, Step 4, effective the pay period beginning June 29,1969 and from GS-15, Step 4 to GS-15, Step 5, effective the pay period beginning July 11, 1971, at which level he would have remained until his retirement—
(a) Plaintiff’s gross back pay for the period from May 2,1969 to May 19,1972 would have been $78,809.44. During that same period, there would have been deducted from plaintiff’s gross pay a total of $5,436.74 for his contributions to the Civil Service Eetirement Fund.
(b) There must be deducted from the above the sum of $41,270.00 for plaintiff’s outside earnings during the period from May 2, 1969 to May 19, 1972. There must also be deducted the sum of $1,750.62 as a reimbursement to defendant of a lump-sum annual leave payment to plaintiff following his wrongful separation.
(c) Accordingly, plaintiff is entitled to a net recovery of $30,352.08 (gross back pay of $78,809.44, less $5,436.74 for contribution to Civil Service Eetirement Fund, less $41,270.00 as set-off for outside earnings, less $1,750.62 as reimbursement to defendant of lump-sum annual leave payment).
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover and judgment is entered for plaintiff as follows :
Plaintiff is entitled to $78,809.44 in back pay, less $41,270.00 representing plaintiff’s outside earnings, less $1,750.62, representing reimbursement to the Government of the lump-sum leave payment made to plaintiff at the time of his separation. Of the remainder, $5,436.74 should be credited to plaintiff’s Civil Service Eetirement Fund Account and the balance, $30,352.08 should be paid to plaintiff.

 Originally enacted as Pub. L. 89-380, Mar. 30, 1966, §§ 2-4, 80 Stat. 94-95.