Civilian pay; Civil Service retirement; exclusion of period of work for a nonappropriated agency; computation of annuity rights. — On April 25, 1980 the court entered the following order:
Before Davis, Kunzig and Bennett, Judges.
Plaintiff brings this action in order to challenge a decision of the Civil Service Commission (CSC) denying him civil service retirement credit for the eleven-year period between 1931 and 1942 during which he served as a civilian employee of the Army War College Post Exchange, and was paid from the nonappropriated funds of that entity. Subsequent to his post exchange service, plaintiff was employed continuously by the federal government until his retirement in 1976 from the Bureau of Indian Affairs.
In 1946, plaintiff applied to the CSC to have his post exchange service credited for retirement purposes.[1] This application was denied. After his retirement, plaintiff once again attempted to receive service credit for his employment with the post exchange, but this request was denied in a 1977 opinion by the CSC’s Bureau of Retirement, Insurance and Occupational Health (BRIOH). The refusal to grant annuity credit was affirmed by the CSC’s Board of Appeals and Review (BAR) in 1978. Plaintiff then filed the present petition. The case is before us for decision on a stipulation of facts. After submission of briefs and oral argument by counsel, we find that defendant is entitled to judgment as a matter of law.
*769 Public Law 82-397, June 19, 1952, 64 Stat. 138, 5 U.S.C. § 2105(c), provides that for purposes of laws administered by the CSC,[2] "[a]n employee paid from nonappropriated funds of the Army and Air Force Exchange Service * * * is deemed not an employee * * *” of the federal government. The CSC administers the civil service retirement laws. See, 5 U.S.C. § 8347(a). It follows, therefore, that service in a nonappropriated fund agency described in section 2105(c), such as a post exchange, is not creditable service for purposes of calculating civil service annuities. See, Patterson v. United States, 216 Ct. Cl. 458, 459 (1978). Plaintiff argues, however, that section 2105(c) was not intended to be applied retroactively to bar service credit for employees in plaintiffs situation, and even if that statute is interpreted to apply to plaintiff, extraordinary circumstances require that this court determine plaintiffs annuity rights by the law in effect before the passage of section 2105(c) in 1952, rather than the law in effect at the time of plaintiffs retirement in 1976.
In Patterson, supra, the plaintiff was a civilian employee of an Army nonappropriated fund activity from 1946 through 1948. BRIOH had refused to revise his retirement pay to include 1946-1948, and the BAR affirmed that decision. We granted the Government’s summary judgment motion based on the applicability of section 2105(c), and the absence of any extraordinary circumstances militating against determining plaintiffs annuity rights by the law in effect at the time of his retirement.
Plaintiff contends that based on the legislative history of section 2105(c), which was not presented to the court in Patterson, we should find that Congress did not intend to deprive him of credit for his eleven years of service with the post exchange since the service was completed approximately ten years before passage of section 2105(c).
Prior to the 1942 Supreme Court decision in Standard Oil Co. v. Johnson, 316 U.S. 481 (1942), civilian employees of post exchanges were not considered to be federal employees for purposes of civil service laws. See, H.R. Rep. No. 1995, 82d Cong., 2d Sess. 2, 6, 8 (1952) (hereinafter "House *770 Report”); S. Rep. No. 1341, 82d Cong., 2d Sess. 1 (1952)(hereinafter "Senate Report”). Some uncertainty as to the correctness of this position arose when the Court held in Standard Oil that "post exchanges as now operated, are arms of the Government * * * [and are] integral parts of the War Department * * 316 U.S. at 485.
This language created a conflict between the Department of Defense, which took the position that the status of post exchange employees for purposes of federal retirement was unaffected by Standard Oil and the CSC which felt that Standard Oil compelled it to adopt a contrary view. House Report at 5, 6. Senate Report at 2. Because of the doubt as to the effect of this language, the Department of Defense requested that the legislation in question be enacted. "[T]o avoid any legal complications in the future with respect to the status of these employees * * *, [the Committee recommends] that this action be taken to clarify the status of these employees.” "This bill merely restates the present understanding of the Department of Defense with respect to the status of these employees * * *.” House Report at 2. See also, Senate Report at 1, 4. The legislation "merely reaffirms the status which exchange employees have always held in the past and which they still hold today.” House Report at 8 (letter of Meyer Solnick, Acting Chief, Legal Branch, Army and Air Force Exchange Service). See also, House Report at 2. In enacting this statute, Congress made clear that it would "neither take away existing rights or privileges of these employees nor confer new rights or privileges.” House Report at 2, 8. Plaintiff erroneously relies on this language as supporting his position that section 2105(c) was not intended to apply to him. In fact, it undercuts it, since the language directly follows statements to the effect that the bill merely restates the present position of the Department of Defense and other administrative agencies which dealt with such personnel, that exchange employees were not federal employees for purposes of laws administered by the CSC. Id. For example, the previously cited letter written by the Acting Legal Branch Chief of the Army and Air Force Exchange Service, specifically states that the doubts raised by Standard Oil
*771 were never recognized or given practical effect by the administrative agencies charged with responsibility for dealing with the personnel. Consequently, this legislation will in no way take away any rights which these employees presently have, nor will it confer upon these employees any rights * * * [they do not presently have]. [House Report at 8.] (emphasis added).
See also, House Report at 2. We believe, accordingly, that plaintiffs interpretation of the "existing rights” language is erroneous.[3]
In addition to his legislative history arguments, plaintiff argues that section 2105(c)’s reference to employees of the "Army and Air Force Exchange Service” excludes plaintiff since before the mid 1940’s, there was no unified exchange "service”; instead, there were a number of independently operated exchanges. This is an overly narrow and technical reading of the statute, particularly since plaintiffs exchange is a predecessor of the unified service. Further, the statute also applies to "other instrumentalities of the United States under the jurisdiction of the armed forces conducted” for the comfort and improvement of armed services personnel. The post exchange involved herein certainly came within the scope of this "catch-all” language even assuming arguendo that it was not part of the "Army and Air Force Exchange Service.” We therefore find nothing in the legislative history of section 2105(c), or plaintiffs interpretation of that statute, which would cause us to find that it does not cover plaintiff.
However, plaintiff argues that even if we interpret section 2105(c) to bar plaintiffs receipt of retirement credit, there are extraordinary circumstances present here which require the court to apply the law in effect prior to 1952 (the year in which section 2105(c) was enacted). As plaintiff recognizes, civil service annuity rights are normally deter *772 mined by the law in effect at the time of retirement. Nordstrom v. United States, 169 Ct. Cl. 632, 639, 342 F.2d 55, 59-60 (1965); Lawrenson v. United States, 139 Ct. Cl. 370, 372-73, 153 F. Supp. 790, 791-92 (1957).
The law is clear that even where, as here, there has been compulsory contribution to a retirement or pension fund the employee has no vested right in it until the particular event happens upon which the money or part of it is to be paid. * * * "The presumption is that such a law [governing annuity benefits] is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise.” * * * [U]ntil the pension or retirement pay is due the employee’s right thereto is not contractual but "* * * a mere expectancy, created by the law, and liable to be revoked or destroyed by the same authority.” Lawrenson, supra, 139 Ct. Cl. at 372-73, 153 F. Supp. at 791-92, quoting from Rafferty v. United States, 210 F.2d 934, 936 (3rd Cir. 1954).
Notwithstanding this clearly established general rule, plaintiff argues that a different result is warranted in this instance. Plaintiff relies on our ruling in Patterson, supra, to support his contention that extraordinary circumstances require the application of pre-1952 law in determining his annuity rights. In Patterson, we stated that "[t]here are no extraordinary circumstances suggesting consideration of any different result in this instance.” This is also true in the instant action, since, although plaintiff attempts to show circumstances which are sufficiently unusual or compelling for us to consider applying law other than that in effect at his retirement, he has failed to do so.
Plaintiff relies heavily on the fact that he first applied for credit in 1946 rather than at retirement, and that his service occurred during a period in which he alleges that CSC policy was to regularly grant service credit to employees of post exchanges.[4] The basis for plaintiffs assertion regarding CSC’s policy prior to November 28, 1945, is an *773 affidavit referred to in Patterson in which a CSC official stated merely that the Commission has not knowingly allowed annuity credit for service with nonappropriated fund activities of the Armed Forces at any time since November 28,1945.
Plaintiff incorrectly interprets this as an admission of a contrary policy prior to that date. In fact, however, it is very likely that CSC did not have a consistent policy prior to November 28, 1945, particularly in light of the doubts and conflicting positions created by the Standard Oil decision in 1942 (see discussion of the legislative history of section 2105(c), supra), and that it established a definite policy against granting credit some time prior to plaintiffs 1946 application for service credit. In any case, nothing prevented CSC from changing its policies on this matter since plaintiff had no legal rights to credit prior to retirement even assuming that CSC’s position before November 28, 1945 had been to allow credit for service with nonappropriated fund activities of the armed forces such as post exchanges. See, Nordstrom, supra, 169 Ct. Cl. at 639, 342 F.2d at 59-60; Lawrenson, supra, 139 Ct. Cl. at 372-73, 153 F. Supp. at 791-92. In this context, we note that even assuming that plaintiffs service was tentatively creditable prior to that date, plaintiff has suffered no legal harm from a change in policy, since there were no deductions made from his pay for the years in question.[5] This also indicates to us that, contrary to plaintiffs allegations on this issue, CSC policy was not to consistently grant credit for post exchange service, or else such deductions would most probably have been made.[6]
Nor does the fact that plaintiffs service amounted to eleven years, rather than the shorter period involved in Patterson constitute an extraordinary circumstance within the meaning of that case.
Unusual or compelling circumstances may not be established merely by showing that this case is not on all fours *774 with Patterson. Plaintiff has provided us with no facts or circumstances extraordinary enough to justify our application of any law other than that in effect at the time of his retirement, i.e., section 2105(c), and his argument must therefore fail.[7]
It is clear from the foregoing discussion that the CSC’s decision disallowing retirement credit for plaintiffs post exchange service was not arbitrary or capricious, was based on substantial evidence, and was in conformity with the requirements of section 2105(c), and we therefore affirm it. See, Power v. United States, 209 Ct. Cl. 126, 129-30, 531 F.2d 505, 507 (1976); Boyle v. United States, 207 Ct. Cl. 27, 34, 515 F.2d 1397, 1401 (1975); Peters v. United States, 187 Ct. Cl. 63, 78, 408 F.2d 719, 727 (1969). We hereby grant defendant’s motion for summary judgment and dismiss plaintiffs petition.
IT IS SO ORDERED.

 It was established during oral argument that plaintiff at no time made contributions to the federal retirement fund for the eleven-year period in question.

 There are certain exceptions to the scope of section 2105(c), but they are not relevant to this action.

 Plaintiffs other arguments with respect to his interpretation of section 2105(c), as supplemented by its legislative history, are also incorrect, and are contrary to the substantial support in the legislative history for the position we have taken in Patterson and the instant case. For example, plaintiff attempts to show that this statute was not intended to affect him because the administrative reasons which created a need for the bill, see, Senate Report at 4, would not apply to employees who were no longer working for the exchange. While it is true that certain reasons for creating the legislation might not apply to plaintiff, one of the primary reasons for its enactment, i.e. the need to clarify the employees’ status for purposes of civil service laws, was clearly relevant to plaintiff.

 However, regardless of what CSC’s policy was between 1942 and 1945, it is unlikely that plaintiff had any expectation of receiving service credit for his post exchange duties during the time he was performing them, since his employment ended early in 1942, the same year in which Standard Oil was decided. As we discussed earlier, the legislative history of section 2105(c) states that prior to Standard Oil, CSC and agency policies were in accord that retirement credit was not allowable for employment with post exchanges.

 See also, note 4, supra.

 In so stating, we do not contest plaintiffs assertion that deductions need not be made during employment in order for the service to be creditable, see FPM Supp. 831-1 (May 15, 1978) §§ S3-4i, S4-la, but we do not deem it relevant to the question presented here. It is equally irrelevant that Social Security deductions were not made from plaintiffs pay.

 In so holding, we also reject plaintiffs argument that because his service was not with the Army and Air Force Exchange Service, but rather was with an independently operated post exchange, it was not covered by section 2105(c). (See our earlier discussion of this issue, supra.) This argument is similarly unpersuasive with regard to a showing of extraordinary circumstances.