Les E. TEMPLETON, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
Respondent.

No. 91–3321.

United States Court of Appeals, Federal Circuit.

Dec. 18, 1991.

Gary Samuel Marx, Marx, Krame & White, Washington, D.C., argued for petitioner.

Samuel C. Watkins, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director. Also on the brief were Jaime Ramon, Gen. Counsel, Gail L. Goldberg, Acting Gen. Counsel and Earl A. Sanders, Atty., Office of Gen. Counsel, Office of Personnel Management, of counsel.

Before NIES, Chief Judge, MARSHALL, Associate Justice (Retired) of the Supreme Court of the United States, sitting by designation, and FRIEDMAN, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) that sustained a decision of the Office of Personnel Management (OPM) denying a former air traffic controller an annuity. 47 M.S.P.R. 592. We vacate and remand.

I.

In August 1981, the Federal Aviation Administration (FAA) removed the petitioner Templeton from his position as an air traffic controller for participating earlier that month in the illegal air traffic controllers' strike. At the time of removal, Templeton was fifty-one years old and had twenty-eight years of federal service. Templeton appealed his removal to the Board, which affirmed in an opinion that decided a number of appeals by discharged air traffic controllers. *Alexander v. Department of Transp.*, 17 M.S.P.R. 297 (1983), *following remand*, 25 M.S.P.R. 360 (1984).

In November 1982, at Templeton's request, the government refunded to him his retirement contributions.

In February 1985, Templeton submitted to OPM an application for retirement benefits, pursuant to 5 U.S.C. § 8336(e) (1988), which provides:

An employee who is voluntarily or involuntarily separated from the service, except for removal for cause on charges of misconduct or delinquency, after completing 25 years of service as an air traffic controller or after becoming 50 years of age and completing 20 years of service as an air traffic controller, is entitled to an annuity.

OPM denied the annuity. In its reconsideration decision, OPM noted Templeton's contentions that he was "misinformed by your former agency, you were not properly advised of your rights to retire from Federal service and that the FAA failed to fulfill its obligation to inform you of your right to retirement benefits." OPM concluded, however, that because it had "not received evidence or specific details supporting any of these claims," 5 U.S.C. § 8336(e) required rejection of the retirement application.

The Board affirmed. The administrative judge found that "the evidence of record does not support appellant's assertion that the FAA willfully failed to inform controllers of their right to early retirement prior to the strike," and that Templeton had "not shown that there was a duty on the part of the FAA to inform him that he had the option of retiring with an annuity or that he was deliberately misled by the FAA." The administrative judge noted Templeton's contention that other allegedly "similarly situated" striking controllers were permitted to retire on an annuity before their discharge became effective, but that "[t]he circumstances surrounding the separation of those controllers who were allowed to retire is not a part of the record" and that "there is no evidence showing years of service, grade, or performance record, of the controllers who retired, to support that assertion. It is also not known if those controllers who were al-

340

lowed to retire, requested information from the FAA concerning their retirement options or if the FAA voluntarily gave such information."

The full Board granted Templeton's petition for review and affirmed the initial decision with modifications. The Board held that "[b]ecause of his removal for cause, the appellant does not meet the statutory conditions for receipt of retirement benefits and, under [*Office of Personnel Management v.*] *Richmond* [— U.S. —, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)] the Board therefore cannot order payment of benefits."

## II.

Except for the point discussed in part III, Templeton's other contentions do not require extensive consideration.

■ A. Templeton first contends that the FAA had a duty to inform him, before his removal became effective, that he was eligible for retirement under § 8336(e). As the administrative judge pointed out, the parties stipulated that if Templeton "had elected to retire prior to the effective date of his removal, even after the notice of decision to remove him was issued, he would have been entitled to the benefits available under 5 U.S.C. § 8336(e)."

We know of no statute, regulation, or other law that imposes such a duty on the FAA, and we decline to imply one. *Cf. Davis v. Office of Personnel Management,* 918 F.2d 944, 946–47 (Fed.Cir.1990) (OPM has no duty to notify potential survivor annuitants of filing requirements); *Nordstrom v. United States,* 342 F.2d 55, 59, 169 Ct.Cl. 632 (1965) (no government duty to inform potential annuitants of changes in retirement laws unless directed to do so by Congress or the President).

■ B. Templeton also argues that the provision of the Employee Retirement Income Security Act (ERISA) requiring that pension plans provide that an employee's right to retirement benefits be nonforfeitable upon the employee's attaining normal retirement age (29 U.S.C. § 1053(a) (1988 & Supp. I 1989)) repealed by implication the

provision in 5 U.S.C. § 8336(e) making the benefits of that section unavailable for air traffic controllers removed "for cause on charges of misconduct or delinquency."

" ' "[R]epeals by implication are not favored," ' *Morton v. Mancari,* 417 U.S. [535,] at 549 [94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974)], quoting *Posadas v. National City Bank,* 296 U.S. 497, 503 [56 S.Ct. 349, 352, 80 L.Ed. 351] (1936). 'The intention of the legislature to repeal must be "clear and manifest." ' *United States v. Borden Co.,* 308 U.S. 188, 198, [60 S.Ct. 182, 188, 84 L.Ed. 181] (1939), quoting *Red Rock v. Henry,* 106 U.S. 596, 602 [1 S.Ct. 434, 439, 27 L.Ed. 251] (1883)." *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). Not only is there no indication nor even suggestion of Congressional intent in ERISA to modify Section 8336(e), but ERISA in terms does not apply to any "employee benefit plan" "established or maintained for its employees by the Government of the United States." 29 U.S.C. §§ 1003(b), 1002(32) (1988). ERISA does not apply to public employee pension systems. *See Shirley v. Maxicare Tex., Inc.,* 921 F.2d 565, 567 (5th Cir.1991); *Standard Oil Co. v. Agsalud,* 633 F.2d 760, 764 (9th Cir.1980), *aff'd mem.,* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981); *Silvera v. Mutual Life Ins. Co.,* 884 F.2d 423, 425 (9th Cir.1989); *Feinstein v. Lewis,* 477 F.Supp. 1256, 1260–62 (S.D.N.Y., 1979), *aff'd,* 622 F.2d 573 (2d Cir.1980) (table). A state supreme court has held the nonforfeitability provisions of 29 U.S.C. § 1053(a) inapplicable to public employee pension systems. *See West Virginia Public Employees Retirement Sys. v. Dodd,* 396 S.E.2d 725, 734 (W.Va.1990).

■ C. Finally, Templeton contends that the different treatment of private employees under the nonforfeitability provisions of ERISA and the denial of early retirement to air traffic controllers removed for cause denies the latter employees equal protection, in violation of the Fifth Amendment. Unlike the ordinary employee, an air traffic controller's striking may have extremely significant impact upon public safety, the national air trans-

portation system, the national economy and public convenience. *See Schapansky v. Department of Transp., FAA,* 735 F.2d 477, 484 (Fed.Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). In the circumstances, Congress had a rational basis for denying the benefits of early retirement to air traffic controllers discharged for cause, while at the same time protecting private sector employees generally from forfeiture of their pension rights once they reached normal retirement age.

## III.

■ A. At oral argument, Templeton's principal contention was that the FAA had treated him unfairly and discriminatorily because it permitted other striking air traffic controllers, before their discharges became effective, to resign and obtain the early retirement for which they were qualified, while denying him that right. At oral argument, the government "agree[d]" that "there is a requirement that employees not be given disparate treatment." The government contended, however, that the record did not show disparate treatment. Templeton's answer was that the lack of evidence in the record was the result of the Board's improper denial of his attempt to obtain that information through discovery. We think Templeton's point is well taken.

There were sufficient indications in the record and elsewhere about the FAA's permitting some controllers to take early retirement before their discharge to entitle Templeton to full discovery on that issue. *Bronger v. Office of Personnel Management,* 769 F.2d 756 (Fed.Cir.1985) (in banc), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986), held that OPM, in calculating striking air traffic controllers' eligibility for early retirement, correctly had refused to include time spent as a military air traffic controller prior to their civilian service, in determining whether they had completed the requisite number of years as an air traffic controller under 5 U.S.C. 8336(e). In giving the background of the case, the court, after stating that the FAA took "appropriate steps to remove those controllers believed to be strike participants," *id.* at 757, further stated:

> However, controllers who were eligible for retirement at that time were given the option of voluntarily retiring, thereby avoiding disciplinary proceedings. Because the FAA considered the petitioners in these appeals to be ineligible for retirement by reason of an insufficient number of years of service, the option of retirement was foreclosed to them by FAA, and petitioners were removed from their positions in adverse action proceedings.

*Id.* at 758.

In denying annuities in that case, OPM relied not only on the controllers' failure to meet the minimum years of service requirement, but, also, on the fact they had been separated for cause. "On appeal to this court, however, OPM concedes that refusal on the ground that petitioners were removed for cause would result in disparate treatment of petitioners vis-a-vis other controllers who were given the option of retirement." *Id.*

The panel opinion in *Bronger v. Office of Personnel Management,* 740 F.2d 1552 (Fed.Cir.1984), in discussing the background of the case, stated:

> The FAA proposed removal of nearly all of those controllers, including petitioners, absent from their jobs between August 3 and 5, 1981, on the basis of absence without leave and strike participation. Shortly after this time the FAA called in petitioners to discuss whether they were eligible for immediate retirement in lieu of removal. The FAA and OPM advised petitioners, all of whom were under age 50, that they were not eligible for immediate retirement annuities because they each lacked 25 years of creditable service as required by 5 U.S.C. § 8336(e) (1982).

*Id.* at 1553.

Almost two years after our decision in *Bronger,* in *Oliver v. Department of Transp.,* 34 M.S.P.R. 193 (1987), the Board dealt with the question whether an air traffic controller discharged for striking was entitled to early retirement for which he

had applied the day before the strike began. The administrative judge held that Oliver was not entitled to an annuity for two reasons: (1) He did not meet the minimum age and service requirements and (2) Section 8336(e) precluded early retirement of a controller who was removed for cause. The Board affirmed the first ground of decision, but rejected the second. It stated:

We reject, however, the administrative judge's alternative holding that even if the appellant had met the age and service requirements, he would not have been eligible under section 8336(e) because he was removed for cause. As noted above, the court remanded this case specifically noting that air traffic controllers who were considered to be striking were given the option of voluntarily retiring to avoid disciplinary proceedings. Further, in *Bronger,* 769 F.2d at 758, OPM conceded that refusal of early retirement on the ground that the petitioners were removed for cause would result in disparate treatment of petitioners vis-a-vis other controllers who were given the option of retirement.

Accordingly, if the appellant had met the age and service requirements under 5 U.S.C. § 8336(e), he would have been entitled to early retirement.

*Id.* at 196.

In its decision in the present case, the Board overruled its *Oliver* decision on the ground that "the effect of OPM's concession in *Bronger* was simply to remove that issue from the case, and not to decide the question or to bind OPM in subsequent cases." The Board gave no explanation of the basis for that conclusion and pointed to nothing in our *Bronger* opinion that supported it.

In the present case, the FAA stipulated before the Board:

1. Prior to his removal for participating in the 1981 air traffic controllers strike, appellant was not offered the opportunity to retire in lieu of removal.

2. Some FAA controllers were offered the opportunity to retire in lieu of removal for participating in the 1981 air traffic controllers strike.

In its opposition filed with the Board to Templeton's Motion to Compel Response to Discovery, the FAA answered Templeton's complaint that the agency "did not affirmatively counsel him about his 'option' to retire instead of participating in the air traffic controllers strike" by stating that the FAA "offered him no such counseling because, in the agency's opinion, retiring during a time of critical staffing shortages occasioned by the air traffic controllers strike was tantamount to participating in the strike."

Templeton contends that these statements and admissions themselves are sufficient to establish that the FAA discriminated against him and that he is entitled to an annuity. We decline to decide that question, however, because we think that Templeton is entitled to full discovery to try to establish the factual basis for his claims in greater detail. We shall accordingly vacate the Board's decision and remand the case to that agency for further discovery and, on the basis of that discovery, for reconsideration of its decision denying Templeton a deferred retirement annuity.

B. In the remanded proceedings, Templeton shall be permitted broad discovery from the FAA, OPM and any other government agencies that may have records pertinent to his claim, including, but not limited to, the following matters:

1. The detailed facts surrounding the retirement and granting of annuities to striking air traffic controllers who were permitted to retire in lieu of being discharged. Templeton is entitled to ascertain whether the FAA or any other government agency took the initiative in informing the controllers of their right to retire, or whether it permitted retirement only if the controllers themselves initiated the process.

2. The basis of the FAA's apparent concession in *Bronger,* and in this case, that some striking air traffic controllers were given the option to retire prior to being discharged.

3.  Any cases in which, other than as part of a settlement, the FAA or the OMB granted a striking air traffic controller an early retirement annuity after the controller had been discharged for participating in the strike.

4.  The basis for the FAA statement, in its response to Templeton's Motion to Compel Response to Discovery, that the agency did not "counsel" Templeton about his option to retire because of "the agency's opinion" that "retiring during a time of critical staffing shortages occasioned by the air traffic controllers' strike was tantamount to participating in the strike."

The government has told us that some of the documents relating to these issues have been destroyed. We expect the government to cooperate fully in the discovery procedures and to produce whatever material is available.

After the discovery has been completed, the Board shall then reconsider its decision, and issue a new opinion explaining the reasons for that decision. In that opinion, the Board should explain the basis for its conclusion in overruling *Oliver* in the present case that OPM's "concession in *Bronger* was simply to remove that issue from the case, and not to decide the question or to bind OPM in subsequent cases." Prior to rendering its decision, the Board should give the parties whatever opportunity is appropriate under its practice to file additional briefs.

C.  *Office of Personnel Management v. Richmond,* —— U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), upon which the Board heavily relied, does not support its decision. *Richmond* held that the government was not estopped from denying benefits not permitted by law because of the employee's reliance on erroneous advice given him by a government official. In this case, however, there is no question of estoppel. Templeton merely seeks the same benefits as other allegedly similarly-situated air traffic controllers.

## CONCLUSION

The decision of the Merit Systems Protection Board is vacated, and the case is remanded to the Board for further proceedings in accordance with this opinion.

VACATED and REMANDED.

## COSTS

No costs.