Jimmy O. GOLD, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–899.

United States Court of Veterans Appeals.

Jan. 11, 1995.

Jimmy O. Gold, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Rosalind E. Masciola, Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

KRAMER, Judge:

The appellant, Jimmy O. Gold, appeals a May 18, 1993, decision of the Board of Veterans' Appeals (BVA) which denied entitlement to an effective date earlier than January 1, 1990, for a dependency allowance. The Court has jurisdiction under 38 U.S.C. § 7252(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The appellant is a World War II veteran who served on active duty from November 1944 to August 1946. Record (R.) at 12. In May 1947, a rating board granted entitlement to service connection for a through-and-through gunshot wound to the left foot and assigned a 30% rating from August 1946. R. at 25.

In December 1990, the appellant submitted a copy of his marriage certificate and asked to have his wife established as his dependent. R. at 27–28. In March 1991, VA amended the appellant's disability compensation award to include additional benefits for his wife, effective January 1, 1991. R. at 34.

In April 1991, the appellant wrote a letter to VA stating that he had been married since 1944, and wondering why he had not received any benefits for his wife or children until 1991. R. at 42. In June 1991, he wrote another letter to VA stating that he should receive payments retroactive to August 1946 because he had been rated 30% ever since then but had not received compensation for his dependents. R. at 52. In July 1991, VA amended the appellant's disability compensation award to provide for additional benefits for the appellant's wife from January 1, 1990. R. at 65.

In August and September 1991, the appellant wrote letters to VA stating that he should have been receiving benefits for his dependents since 1946, and that documentation from 1946 would prove that he had a wife and children. R. at 54, 75. In October 1991, VA wrote a letter to the appellant stating as follows:

> Dependency allowance has been allowed for 30% service[-]connected compensation since 1978. Your claim for dependents was received in December 1990 and that is why we added your spouse effective January 1, 1991. Any documents received in 1946 would not serve to establish a claim from a date earlier than December 1990.

R. at 78. The appellant filed a Notice of Disagreement in November 1991. R. at 80, 84.

In December 1991, VA issued a Statement of the Case (SOC) which included the following entries:

> October 1, 1978: A new law, PL95–479 [Veterans' Disability Compensation and Survivors' Benefits Act of 1978, Pub.L. No. 95–479, § 102(b), 92 Stat. 1560, 1562 (1978) [hereinafter Pub.L. 95–479]], went into effect which provides additional compensation on account of a spouse, child, or dependent parent for veterans having service[-]connected disability of 30% or more. The veteran was informed by letter that if he wished to file for this additional compensation, he should complete and return the enclosed form. A copy is enclosed.

> . . . .

> *REASONS FOR DECISION:*

> Prior to October 1, 1978, there were no additional compensation benefits payable for dependents of veterans evaluated at 30%. After the law was passed all veterans with 30% disability were sent letters inviting them to claim their dependents. A copy of the letter is attached. The veteran submitted his marriage certificate in December of 1990. The effective date of payment would be January 1, 1991. However, in this case there was liberalizing legislation and the veteran met and continued to meet all the eligibility criteria since October 1, 1978. Benefits were paid January 1, 1990. This is the earliest possible effective date of payment for benefits.

R. at 84–85. The letter attached to the SOC, dated November 14, 1978, was a form letter entitled "DVB Circular 21–78–10[,] Change 1[,] EXHIBIT D," which informed the addressee that: (1) a law had been passed which provided additional compensation for dependents to veterans having a service-connected disability of 30% or 40%; (2) if the addressee wished to claim this additional compensation, he/she should complete the reverse side of the letter; and (3) if the claim was received before October 1, 1979, the increased compensation for dependents would be effective October 1, 1978; and, if not, it would be effective from the "date of receipt of the evidence." R. at 87.

In December 1991, the appellant filed a VA Form 1–9, Appeal to the BVA, stating that, although he now understood that he could not claim his dependents until October 1978, he never received a letter notifying him of the change in law. He argued that VA never sent the letter, or, if it did, he never received it, and therefore he should be able to claim his dependents back to October 1, 1978. R. at 99. Also in December 1991, the Honorable Mel Hancock, a member of the United States House of Representatives, wrote a letter to VA asking for review of a December 1991 letter written by the appellant stating that the appellant had a 30% disability rating from 1946, and was never informed that he was entitled to additional compensation for his dependents. R. at 89–91. In January 1992, VA wrote a letter to Representative Hancock which stated as follows:

> Effective October 1, 1978, veterans entitled to 30 and 40 percent compensation awards first became entitled to an additional allowance for dependents. In 1979, we attempted to notify all veterans of the new legislation.
>
> We did not receive a claim from Mr. Gold until December 21, 1990. Benefits were paid effective January 1, 1990. The law provides that retroactive benefits of one year may be paid. He has disagreed with this decision and on December 5, 1991, we sent him a[n] [SOC]. This is an explanation of our action and the first step in the appeal process.

R. at 93.

In May 1993, the BVA denied entitlement to an effective date earlier than January 1, 1990, for a dependency allowance. The BVA found that: (1) the duty to assist does not include a duty to provide either the appellant or his dependents with personal notice of eligibility for benefits under a specific regulation; (2) (prior to and) since October 1, 1978, the appellant has been legally married and has had a service-connected disability rating of not less than 30%; (3) the appellant did not file a claim for a dependency allowance until December 1990; and (4) the appellant is eligible to receive benefits for one year prior to the date of the receipt of his claim, therefore making January 1, 1990, the appropriate effective date. R. at 3–8.

## II. ANALYSIS

### A. Duty to Notify

The issue presented in this case is whether the appellant is entitled to an earlier effective date for the award of a dependency allowance for his spouse based on VA's failure to notify him of his eligibility for such an allowance. In order to resolve this issue, the Court must consider the relevant statutory provisions from which a duty to notify might have arisen on October 1, 1978, the effective date of the liberalizing law (Pub.L. No. 95–479).

### 1. Notification Under 38 U.S.C. § 1115 (Formerly § 315) and Pub.L. No. 95–479

■ First, the Court will consider whether the statute governing dependency allowance, formerly codified at 38 U.S.C. § 315 (redesignated without substantive change as § 1115 by the Department of Veterans Affairs Codification Act, Pub.L. No. 102–83, § 5(a), 105 Stat. 378, 406 (1991) (found at 38 U.S.C. § 101 note) [hereinafter § 1115]) or Pub.L. No. 95–479 contains any notification provisions. Prior to October 1, 1978, 38 U.S.C. § 1115 read as follows:

> Any veteran entitled to compensation at the rates provided in section 314 of this title [redesignated as § 1114 by § 5(a) of the Department of Veterans Affairs Codification Act, *supra*], and whose disability is rated not less than 50 per centum, shall be

entitled to additional compensation for dependents....

Effective October 1, 1978, section 102(b) of Pub.L. No. 95–479 amended § 1115 by substituting "30 per centum" for "50 per centum." Both § 1115 and Pub.L. No. 95–479, as well as the accompanying legislative history to Pub.L. No. 95–479, are silent as to notification procedures regarding potential beneficiaries of the new law. *See* H.R.REP. No. 1226, 95th Cong., 2d Sess. (1978); S.REP. No. 1054, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 3465. *See also* EXPLANATORY STATEMENT ON H.R. 11886, 124 CONG. REC. S16,896 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3526.

In *Wells v. Principi,* 3 Vet.App. 307, 309 (1992), the Court stated that where there is no clear indication that a statute was enacted with an intent to impose on the Secretary a duty to notify potential beneficiaries of a new law, "the Court cannot otherwise create such a duty." *See Templeton v. OPM,* 951 F.2d 338, 340 (Fed.Cir.1991) (where no statute or other law imposed a duty on the Federal Aviation Administration to inform an appellant of his eligibility for retirement benefits, Court declined to infer such a duty); *Davis v. OPM,* 918 F.2d 944, 946–47 (Fed.Cir.1990) (OPM has no duty to notify potential survivor annuitants of filing requirements); *Nordstrom v. United States,* 342 F.2d 55, 59, 169 Ct.Cl. 632 (1965) (no duty of notice of change in law absent mandatory instructions from Congress or the President); *cf. Ardestani v. I.N.S.,* 502 U.S. 129, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (absent clearly expressed contrary intent, statutory terms are to be interpreted according to their ordinary meaning); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) (courts should not read restrictions into statute that were not clearly intended by Congress). Therefore, because there is no clear indication in either § 1115 or Pub.L. No. 95–479 that Congress intended to create a duty to notify potential beneficiaries of the change in law, the Court holds that no such duty was created by that law.

## 2. *Notification Under 38 U.S.C. § 5110(g) (Formerly § 3010(g))*

■ Second, the Court will consider whether the statutory provision governing effective date (in 1978 and thereafter) where a new law grants additional benefits, formerly codified at 38 U.S.C. § 3010(g) (redesignated without substantive change as § 5110(g) by Department of Veterans Affairs Health–Care Personnel Act of 1991, Pub.L. No. 102–40, § 402(b)(1), 105 Stat. 187, 238–39 (1991) [hereinafter § 5110(g) ] ), contains any notification provisions. Section 5110(g) of title 38, U.S.Code, provides:

> Subject to the provisions of section 5101 of this title, where compensation ... is awarded or increased pursuant to any Act ..., the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act.... In no event shall such award or increase be retroactive for more than one year from the date of application therefor....

In *Wells, supra,* the Court specifically addressed the issue of whether § 5110(g) imposes a duty on the Secretary to notify potential beneficiaries of a new law affecting dependency and indemnity compensation [DIC]. The Court held as follows:

> Even assuming that [§ 5110(g) ] was ambiguous, which it is not, the legislative history, itself, is, at best, ambiguous on whether a duty is to be imposed on the Secretary to seek out potential beneficiaries of a new law or administrative issuance affecting DIC.... Consequently, there is no clear indication that the statute was enacted with an intent to impose such a duty on the Secretary, and the Court cannot, otherwise, create such a duty.

*Wells,* 3 Vet.App. at 309. Therefore, the Court concludes that the Secretary had no duty under § 5110(g) to inform the appellant of his eligibility for a dependency allowance. *See Templeton, supra; Davis, supra; Nordstrom, supra; cf. Ardestani, supra; Chevron, supra.*

## 3. *Notification Under 38 U.S.C. § 7722 (Formerly § 241) and DVB Circular 21–78–10*

■ Third, the Court will consider the notification provisions (in effect in 1978 and

thereafter) formerly codified in 38 U.S.C. § 241 (redesignated without substantive change as § 7722 by the Department of Veterans Affairs Codification Act, Pub.L. No. 102–83, § 2(b), 105 Stat. 378, 400 (1991) [hereinafter § 7722] ), and the notification provisions contained in the DEPARTMENT OF VETERANS BENEFITS (DVB) CIRCULAR 21–78–10, IMPLEMENTATION OF PUBLIC LAW 95–479, at 4 (October 18, 1978) [hereinafter DVB Circular 21–78–10]. Section 7722(c), (d) provides:

> (c) The Secretary shall distribute full information to eligible veterans and eligible dependents regarding all benefits and services to which they may be entitled under laws administered by [VA]....
>
> ....
>
> (d) The Secretary shall provide, to the maximum extent possible, aid and assistance ... to ... veterans ... and eligible dependents with respect to subsection[ ] ... (c) ... and in the preparation and presentation of claims under laws administered by [VA].

Page four of DVB Circular 21–78–10 provides:

> (4) A preprinted computer letter (Exhibit D) will be sent as soon as possible (probably mid-November) to all veterans in receipt of compensation based on 30% through 49% disability.
>
> (a) This letter will indicate that additional compensation for dependents is now payable to veterans 30% or more disabled and will contain a form on the reverse side which may be used to apply for such benefits. The regional office of jurisdiction will be shown as the return address on these letters for all cases including [relocation of active cases] located at the [the Records Processing Center].

Assuming, without deciding, that § 7722 imposed a duty on the Secretary to notify the appellant of his eligibility for a dependency allowance, *see Lyman v. Brown*, 5 Vet.App. 194, 196 (1993); *Smith (E.F.) v. Derwinski*, 2 Vet.App. 429, 431–32 (1992); *Morris v. Derwinski*, 1 Vet.App. 260, 264 (1991), and further assuming that DVB Circular 21–78–10 imposed a similar duty on the Secretary, *see Montalvo v. Brown*, 7 Vet.App. 312, 314–15

(1995) (DVB CIRCULAR 21–79–3, ELECTION PROCEDURES FOR PL 95–588 (February 22, 1979), requiring that the Secretary "furnish" the veteran's widow with the appropriate form for the election of improved pension benefits had the "force and effect of law" in that it implemented, rather than interpreted, the statutory right of election), the Court will now address whether such duty was satisfied.

The record and the appendix to the Secretary's brief contain VA documents indicating that a notification letter was sent to the appellant, but the appellant asserts that he never received the letter. R. at 84–85, 87, 99; Secretary's Brief, Ex. 1, p. 4. "The presumption of regularity supports the official acts of public officers and, in the absence of *clear evidence to the contrary*, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) (emphasis added); *see Ashley v. Derwinski*, 2 Vet.App. 62, 64 (1992), *mot. for recons. granted*, 2 Vet.App. 307 (1992). Therefore, in the absence of "clear evidence to the contrary," the Court will presume that VA mailed a letter to the appellant on or about November 14, 1978, notifying him of his eligibility for a dependency allowance pursuant to Pub.L. No. 95–479. *See Ashley*, 2 Vet.App. at 65.

In *Ashley*, the Court was faced with the question of whether nonreceipt of a BVA decision, standing alone, was the type of "clear evidence to the contrary" which was sufficient to rebut the presumption that officials and employees of the BVA "properly discharged their official duties" within the meaning of *Chemical Foundation, supra*. In answering that question in the negative, the Court stated as follows:

> Evidence that a BVA decision was not received is just that: evidence going to the question of receipt; it is not evidence going to the question of mailing. At most, evidence of non-receipt of a BVA decision, indeed the *fact* of non-receipt, arguably may raise an inference that the decision was not mailed but that is hardly the type of "clear evidence" which *Chemical Foundation* requires to rebut the presumption

of regularity which "supports the official acts of public officers." *Ashley,* 2 Vet.App. at 65. Here, even assuming that the appellant did not receive a notification letter, this fact, standing alone, is not sufficient to rebut the presumption that VA carried out any duty it had to send the appellant such a letter. In addition, while the Court notes that the January 1992 VA letter to Representative Hancock indicated a 1979 notification date, such fact does not constitute clear evidence that a letter dated in late 1978 was not sent. Therefore, in the absence of any "clear evidence to the contrary," the Court must assume that VA discharged any duty it had to notify the appellant of his eligibility for a dependency allowance.

### B. Effective Date

 Section 5110(g) of title 38, U.S.Code, quoted *supra,* governs the effective date in cases, such as this one, where a new law has granted additional benefits. *See Viglas v. Brown,* 7 Vet.App. 1, 3 (1994) (§ 5110(g) constitutes a specific exception to the § 5110(a) stricture that the effective date of an award of compensation shall not be earlier than the date of receipt of application therefor). Pursuant to § 5110(g), the appellant first met the criteria for a dependency allowance on October 1, 1978, which is also "the effective date of the Act," Pub.L. No. 95–479. However, because the appellant did not file an application for a dependency allowance until December 1990, he can obtain retroactive dependency allowance for his wife for only "no more than one year [prior to] the date of application [December 1990]." 38 U.S.C. § 5110(g). Thus, the BVA properly determined that the effective date of the award of a dependency allowance is January 1, 1990. *See* 38 U.S.C. § 5111 (payment of monetary benefits based on an award of compensation may not be made before the first day of the calendar month following the month in which the award became effective under 38 U.S.C. § 5110).

### III. CONCLUSION

Upon consideration of the record and pleadings of the parties and the above analysis, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error which would warrant reversal or remand. The May 18, 1993, BVA decision is AFFIRMED.