Fitcher L. LEWIS, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–469.

United States Court of Veterans Appeals.

Nov. 1, 1995.

Fitcher L. Lewis, pro se.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Vito A. Clementi, Washington, DC, were on the pleadings for the appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

FARLEY, Judge:

This is an appeal from a February 23, 1994, decision of the Board of Veterans' Appeals (BVA) which denied the appellant's claim for an effective date earlier than September 1, 1992, for "improved" pension benefits. The appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will grant the Secretary's motion for summary affirmance and affirm the decision of the BVA.

## I.

The appellant served in the Army from September 1950 until February 1951. Record (R.) at 14. He obtained a rating of individual unemployability due to non-service-connected disabilities in September 1971, and was awarded non-service-connected pension benefits with an effective date of April 1971. R. at 6, 17–18.

In January 1979, title 38 of the U.S.Code was amended to "provide improvements in the pension program for certain veterans of a period of war with non-service-connected disabilities, [and] for certain surviving spouses of veterans of a period of war. . . ." Veterans' and Survivors' Pension Improvement Act of 1978, Pub.L. No. 95–588, 92 Stat. 2497 (1978). The regional office (RO) furnished the appellant with an election card, which he completed and returned. Supplemental Record (Suppl.R.) at 1. Just to the left of the appellant's signature, the election card stated: "I understand [that] this election . . . will not be accepted unless such election is now to my advantage." *Ibid.* However, in September 1979, the RO advised the appellant that he would receive only $23.00 under the "improved pension program" instead of the $33.72 pension which he was receiving under the old program. R. at 20. The RO stated, "[W]e have not accepted your election and we will not take any further action on it unless you tell us to do so in writing. . . . You can make a new election at any time in the future and we will determine whether it is to your advantage." *Ibid.*

The appellant submitted another election form for the improved pension program in July 1980. Suppl.R. at 2. The form contained the same qualification as had the 1979 election card as to the election not being accepted unless advantageous to the beneficiary. *Ibid.* The RO responded that it still was not to the appellant's benefit to transfer to the improved pension program and advised him exactly as it had in September 1979. Suppl.R. at 3.

In August 1992, the appellant again elected to receive benefits under the improved pension program. R. at 24. The RO approved his election and granted him an effective date of October 1, 1992 (R. at 31), which was subsequently changed to September 1, 1992 (R. at 38). The appellant filed a Notice of Disagreement in April 1993, stating that he was entitled to "back benefits." R. at 34. On his VA Form 1–9, the appellant wrote,

I am asking for retroactive Improved Pension. . . . Whenever I would contact the [RO] in Baltimore, Md.[,] they would say I have the best selection. They did that for years. It wasn't until August 4, 1992 when I [was] hospitalized . . . [that] a V.A. Counselor told me[ ] I [was] entitled to Improved Pension long ago. I am also asking for interest on all money witheld [sic] from me.

R. at 52. On August 12, 1993, the appellant testified at a BVA hearing that the last time he had called the RO and asked whether he should change to the improved pension program was approximately two years before. R. at 61. He also testified that he thought he should have been automatically transferred to the improved pension program as soon as he was eligible for a higher award under it. R. at 61–62.

In February 1994, the BVA denied the appellant's claim, holding that an earlier effective date for an improved pension was not warranted because "[u]nder 38 C.F.R. § 3.713 (1993), an election to receive improved pension shall be effective the date of receipt of the election." *Fitcher L. Lewis,* BVA 94–02164, at 4 (Feb. 23, 1994); R. at 7. The BVA also stated, "VA does not have a duty to automatically provide someone such as the veteran with personal notice of eligibility for benefits. . . ." *Ibid.* This appeal followed.

## II.

The appellant argues that he is entitled to an earlier effective date because VA had a continuing duty to review the amounts available to him under both the old and the new pension programs and to "automatically" deem his improved pension election effective on the date his benefits under the improved pension program exceeded those under the old program. Therefore, the Court will examine all "relevant statutory [and other] provisions from which a duty to notify might

have arisen." *Gold v. Brown,* 7 Vet.App. 315, 317 (1995).

## A. *Public Law No. 95–588*

Public Law No. 95–588 created a new pension program for non-service-connected veterans, "certain surviving spouses," and "certain surviving children." (For ease of reference, the term "pensioners" will be used to refer to all beneficiaries.) Although most eligible pensioners received more money under the improved pension program, that was not the case for all, including the appellant. Presumably to provide for this situation, the statute provided that pensioners who did not elect to receive benefits under the new program "shall continue to receive pension at the monthly rate being paid to such person[s] on December 31, 1978." Pub.L. No. 95–588 § 306(a)(2), 92 Stat. at 2508; *see* 38 U.S.C. § 1521 note (Savings Provision for Persons Entitled to Pension as of December 31, 1978; Other Provisions) ("§ 306"). The pensions received by those who did not elect to receive improved pension benefits are called "Section 306 pensions." H.R.Conf.Rep. No. 1768, 95th Cong., 2d Sess. 30 (1978), *reprinted in* 1978 U.S.S.C.A.N. 5702, 5717. The proper amount of benefits for a particular pensioner under each pension program may change from year to year because the basis of calculation is different. *Compare* 38 U.S.C. § 521(b) (1977) (although § 521(b) is no longer in effect, § 306(a)(2) provides that a pensioner who did not elect to receive an improved pension "shall continue to receive pension at the monthly rate being paid to such person on December 31, 1978, subject to all provisions of law applicable to basic eligibility for and payment of pension under section 521 ... of title 38, United States Code, as in effect on December 31, 1978 ...") *with* 38 U.S.C. § 1521(b)–(i) (subsections listing factors which determine amount of benefits under improved pension program). Therefore, although it might have been disadvantageous to a pensioner to elect improved pension benefits in 1979, such an election may have become advantageous sometime after that. This was true for the appellant, although the record does not reflect when his improved pension benefits would have exceeded the section 306 pension benefits.

The very nature of the statutory system, i.e., the requirement that a pensioner file an election in order to enter the improved pension program, inherently refutes the appellant's argument that he was entitled to be automatically transferred to that pension program once the amount of benefits it would provide surpassed those of the section 306 pension. The transfer process could not begin until a pensioner filed an election to participate in the improved pension program. Furthermore, the language of § 306, the only part of Pub.L. No. 95–588 which deals with the election process and with the ability of pensioners to remain in the old pension program, neither explicitly nor implicitly requires VA to perform periodic or continual comparative calculations or to notify the pensioner if greater benefits were available under the improved program. Nor does the joint explanatory statement accompanying the conference report on the compromise bill that became Public Law No. 95–588 hint that comparative calculations or notification were even contemplated. *See* H.R.Conf.Rep. No. 1768, 95th Cong., 2d Sess. 29–30 (1978). Therefore, since there is "no clear indication that the statute was enacted with an intent to impose such a duty on the Secretary, ... the Court cannot, otherwise, create such a duty." *Wells v. Principi,* 3 Vet.App. 307, 309 (1992); *see also Templeton v. OPM,* 951 F.2d 338, 340 (Fed.Cir.1991) ("We know of no statute, regulation, or other law that imposes ... a duty on the [Federal Aviation Administration to inform an employee of his eligibility for retirement benefits], and we decline to imply one."); *Gold,* 7 Vet.App. at 318.

## B. *DVB Circular 21–79–3 and the VA Adjudication Procedure Manual*

The circular issued by the Department of Veterans Benefits (DVB) which implemented Public Law No. 95–588 "provided that all beneficiaries in receipt of the applicable pensions as of January 1979 were to be 'furnished' an election card and an instruction sheet." *Montalvo v. Brown,* 7 Vet.App. 312, 313–14 (1995) (citing DVB Circular 21–79–3, Election Procedures for PL 95–588 (Circular), at 1 (February 22, 1979)). The circular also provides: "When an election is re-

ceived, award action will be deferred if the monthly rate payable would not be at least $5 more that the rate currently being paid," and that "[i]f improved [pension] is not the greater benefit, appropriate informational messages will be displayed and a letter will be generated." CIRCULAR at 3, 5.

The relevant sections in the VA Adjudication Procedure Manual, M21–1 (M21–1), are substantially identical to the circular's provisions: when "an election is received, defer award action if the monthly rate of pension under the Improved Pension law would be less than the current monthly rate under the prior law." M21–1, Part IV, § 20.08(a) (April 3, 1992).

> If election of Improved Pension may not be in the claimant's financial interest, inform the claimant by locally generated letter of the exact monthly rates payable under each law for the periods indicated. Tell the claimant that, because of the possible adverse result, further action on the election will not be taken unless he or she furnishes a signed statement expressing a desire to receive the possible lesser benefit.

M21–1, Part IV, § 20.08(b)(1) (April 3, 1992).

■ Thus, by the Circular and the M21–1 provisions discussed above, VA imposed on itself a duty to furnish an election card and an instruction sheet, as well as a duty to provide a letter in response to an election card received from a pensioner advising of, inter alia, the pension amounts in question in that case. However, none of the cited provisions, nor anything else in the circular or the M21–1, imposed a duty upon VA to monitor the old and new programs in the manner that the appellant is suggesting. Therefore, the Court concludes that no duty to notify arises from either the DVB circular or the M21–1. Section 306 of Public Law No. 95–588, the DVB circular, and the above-quoted M21–1 provisions establish that VA's duty to calculate whether it was beneficial to the appellant to switch to the improved pension program had to be triggered by a request or election from the appellant. The Department fulfilled its duties pursuant to the Circular and the M21–1 provisions in this case when, after having received an election request, VA noti-

fied the appellant that the election would not be advantageous to him at that time, and informed him that he must notify VA in writing if he wished further action to be taken on the election.

### C. 38 U.S.C. § 7722

■ Section 7722 of title 38, U.S.Code, imposes on the Secretary "an affirmative duty to assist claimants in understanding how to file for benefits and what evidence is required." Morris v. Derwinski, 1 Vet.App. 260, 264 (1991). Subsections (c) and (d) of 38 U.S.C. § 7722 provide:

> (c) The Secretary shall distribute full information to eligible veterans and eligible dependents regarding all benefits and services to which they may be entitled under laws administered by [VA]....
>
> (d) The Secretary shall provide, to the maximum extent possible, aid and assistance ... to ... veterans ... with respect to subsection[ ] ... (c) ... and in the preparation and presentation of claims under laws administered by [VA].

The Court concludes, however, that this language cannot be read to support the appellant's argument that VA is under a virtually universal duty to compare, contrast, and notify.

■ "The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" Gardner v. Brown, 5 F.3d 1456, 1458 (Fed.Cir.1993) (quoting Good Samaritan Hosp. v. Shalala, 508 U.S. 402, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993)), aff'd, —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); Davenport v. Brown, 7 Vet.App. 476, 481 (1995). Although § 7722 does, by its terms, require VA to inform veterans of "all benefits and services to which they may be entitled" and to assist veterans "to the maximum extent possible ... in the preparation and presentation of claims," the extent of such a duty will depend on the facts and law involved in a particular case. See Smith (Edward) v. Derwinski, 2

Vet.App. 429, 432 (1992). In this case, VA adopted certain duties as described in part II.B., above, with respect to pension benefits. In carrying out these duties, the Department also satisfied its general § 7722 duties when it informed the appellant in 1979 that he was entitled to pension benefits under the improved pension program and sent him the election card. *See Gold,* 7 Vet.App. at 319 (holding that evidence that VA sent appellant an election card, when combined with presumption of regularity accorded to the official acts of public officers, including mailings, was enough to discharge any § 7722 duty, assuming there was one); *Kluttz v. Brown,* 7 Vet.App. 304, 307–08 (1994) (where VA never informed appellant of her reeligibility for pension benefits based on her first husband's death after her second husband died and both of her husbands were veterans, Court held that VA discharged its § 7722 duty by sending her a pension application with blanks for prior marriages after death of her second husband); *Smith, supra; Morris,* 1 Vet.App. at 264–65.

The appellant, in essence, is requesting that the Court impose a more expansive duty, i.e., a duty to inform a veteran when one of the two benefit programs he or she is eligible for suddenly becomes more advantageous to him or her. The plain language of § 7722, however, does not impose such a duty, and we cannot read one into the statute. Therefore, § 7722 also does not provide a basis for the relief that the appellant seeks, and his claim must fail.

### III.

The Court holds that VA did not violate any statutory, regulatory, or other provision by failing to notify the appellant when it would have been to his benefit to elect improved pension benefits. Accordingly, the Court grants the Secretary's motion for summary affirmance, and the February 23, 1994, decision of the BVA is AFFIRMED.