**John A. McCAY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–881.

United States Court of Veterans Appeals.

June 12, 1996.

John A. McCay, pro se.

Mary Lou Keener, General Counsel, Norman G. Cooper, Assistant General Counsel, Adrienne Koerber, Deputy Assistant General Counsel, and Vito A. Clementi, Washington, DC, were on the brief for the appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

IVERS, Judge:

John A. McCay appeals from a September 27, 1994, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for an earlier effective date for residuals of removal of dermatofibrosarcoma protuberance, keratitis of the left eye, and removal of the left tear duct. *John A. McCay*, BVA 94–——— (Sep. 27, 1994). On November 1, 1995, the Court issued its opinion reversing the decision of the BVA and remanding the matter for payment of a retroactive award. *McCay v. Brown*, 8 Vet.App. 378 (1995). On November 22, 1995, the Secretary filed a motion for reconsideration of the panel opinion. The Court granted the Secretary's motion for reconsideration, and on December 8, 1995, the Court issued an order inviting a response from the appellant. The appellant filed a response on January 23, 1996.

The motion for reconsideration and the parties' responses having been considered by the Court, and the motion for reconsideration having been granted, the Court vacates its November 1, 1995, opinion, and issues this opinion in its stead. The Court notes that this opinion does not differ in result from the vacated opinion, although the analysis as to the nature and extent of the application of 38 C.F.R. 3.114 have been revised.

The Secretary contends that when 38 C.F.R. § 3.114 is properly applied, the appellant is not eligible for a retroactive award because the Secretary's regulation is a permissible construction of 38 U.S.C. § 5110. The appellant argues that the regulation contradicts the statute and congressional intent for awarding this specific type of benefit; that in similar cases the Secretary has taken contrary positions in interpreting 38 U.S.C. § 5110 and 38 C.F.R. § 3.114; and that VA is following an Office of General Counsel opinion which was issued during the litigation of this matter.

## I. FACTS

The appellant served in the United States Army from May 7, 1969, to October 19, 1970, with a tour of duty in the Republic of Vietnam. Record (R.) at 19. In December 1970, the appellant was treated for a skin infection of the left leg. R. at 33. The appellant applied for, and the regional office (RO) granted, service connection for skin infection of the left leg (no rating given). R. at 35.

In May 1990, the appellant applied for service connection for a soft tissue sarcoma "due to exposure to agent orange, skin condition." R. at 38. The appellant submitted medical evidence which indicated that in June 1987, he developed a large mass in his left cheek and eyelid, and was diagnosed with dermatofibrosarcoma protuberance, a soft tissue sarcoma. R. at 42. Dermatofibrosarcoma is a fibrosarcoma (tumor derived from fibroblasts that produce collagen) of the skin. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 452, 629, 1485 (27th ed. 1988) [hereinafter DORLAND'S]. The physician noted that the appellant required surgery with

> extensive excision of the entirety of the soft tissue of his right cheek, medial nose, as well as the majority of his right lower eyelid and right upper lip with soft tissue reconstruction on June 17, 1987. Because of the amount of resection required for the treatment of this soft tissue sarcoma, the patient has been left with significant deformity and disability.

R. at 42. The appellant also had the majority of the left eyelid resected with reconstruction which left him unable to close his left eye completely. *Ibid.*

The appellant underwent a VA rating examination in April 1991 which diagnosed him with dermatofibrosarcoma protuberance. R. at 65. In May 1991, the appellant was granted service connection for a dermatofibrosarcoma protuberance and defect of the left side (rated as 10% disabling), as of May 24, 1990, and skin infection of the left leg (rated 0% disabling) as of May 24, 1990. R. at 77. A physician's note dated June 1991, indicated that the appellant had keratitis of the left eye. R. at 83. Keratitis means inflammation of the cornea. DORLAND'S at 873. In July 1991, the RO granted service connection for keratitis of the left eye (rated as 10% disabling) from May 24, 1990, and increased the rating for dermatofibrosarcoma protuberance (rated as 30% disabling). R. at 92. The appellant filed a Notice of Disagreement (NOD) requesting an increased rating for his

left leg skin condition, a separate rating for his eye condition because of the removal of the tear duct, and an earlier effective date for his ratings. R. at 94. A Statement of the Case (SOC) was issued. R. at 100. The appellant filed an appeal with the BVA. R. at 107. In May 1992, the BVA remanded the case for a physical examination. R. at 122–24.

A VA eye examination noted that the appellant had no keratitis, but a "deficient tear layer" and dry spots in each eye "indicating dry eye syndrome." R. at 128. The examiner also noted that the appellant had "intermittent lacrimation." *Ibid.* The appellant also underwent orthopedic and dermatology examinations. R. at 129–34. The appellant reported that he was exposed to Agent Orange during his tour of duty as a medic in Vietnam. R. at 130, 133. The dermatology examiner noted "minimal findings" of urticarial papules, one on the left lower extremity and one on the calf region. R. at 133. Urticaria means a vascular reaction which is usually transient. DORLAND'S at 1796. A papule is a small superficial solid elevation of the skin. *Id.* at 1221. The examiner indicated that the appellant had some scaling and redness of the scalp which the appellant noted he had had for the last several years. R. at 134. The orthopedic examiner, Dr. J. Grossman, noted: (1) referral to the eye clinic; (2) referral to the dermatology report; (3) left hip strain with radiological follow-up; (4) left knee strain; (5) left arm scar from a childhood injury; (6) facial deformity secondary to cancer surgery; and (7) neuropsychiatric disorder secondary to military service manifested by social avoidance and sense of isolation and intrusive thoughts. R. at 132. Dr. Grossman referred the appellant to the Knoxville Combat Veterans Outreach Center for "additional medical professional treatment and care for his neuropsychiatric conditions and disorders." *Ibid.*

A Supplemental SOC was issued, and the RO reviewed the case. R. at 147. In August 1992 the RO established the following ratings: for dermatofibrosarcoma protuberance of the left cheek and subcutaneous defect of the left side of the face, increased to 50% as of May 24, 1990; for exposure of keratitis of the left eye, 10% from May 24, 1990; for removal of the left tear duct system (rated as 10% disabling) from May 24, 1990; for skin infection of the left leg (rated as 0% disabling) from May 24, 1990. R. at 153. The appellant appealed this decision to the BVA, requesting an earlier effective date for entitlement to compensation for dermatofibrosarcoma protuberance of the left cheek with a subcutaneous defect; an earlier effective date of eligibility for compensation for keratitis of the left eye; an earlier effective date for compensation for the removal of the left tear duct; and, entitlement to an increased rating for a skin disorder of the left leg. R. at 158–60. In July 1993, the BVA denied the appellant's claim on all of the issues presented.

The appellant filed an appeal with this Court, and the Secretary filed a motion for remand for failure to provide sufficient reasons and bases for the BVA decision, which the appellant did not oppose. R. at 171, 173–75. Specifically, the Secretary's motion for remand indicated that the BVA had failed to consider and discuss the applicability of 38 C.F.R. § 3.114(a), 38 U.S.C. § 5110(g), and several VA Office of General Counsel opinions pertaining to retroactive entitlement to VA benefits. R. at 176–77. On July 11, 1994, this Court granted the Secretary's motion and vacated the July 1993 BVA decision. R. at 172; *McCay v. Brown,* 7 Vet.App. 22 (order 1994) (table). In September 1994, the BVA reviewed the appellant's record and denied earlier effective dates for compensation for dermatofibrosarcoma protuberance of the left cheek with a subcutaneous defect, for compensation for keratitis of the left eye, and for compensation for removal of the left tear duct system. *John A. McCay,* BVA 94–—— (Sep. 27, 1994). The Board did not discuss the issue of a skin disorder of the left leg, stating that because the appellant did not address it in his statement of issues on appeal to this Court from the July 1994 BVA decision, the Board considered that claim abandoned. *Id.* at 2. The appellant has not raised the issue in the most recent appeal. The appellant filed a timely appeal with this Court appealing the Board's decisions on the issues addressed in its most recent opinion.

## II. ANALYSIS

### A. Relevant Provisions

The Court reviews the Board's findings of fact under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Proscelle v. Derwinski*, 2 Vet.App. 629, 631–32 (1992). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53. The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert*, 1 Vet.App. at 56–57.

In order to be eligible for benefits, a veteran must file "[a] specific claim in the form prescribed by the Secretary." 38 U.S.C. § 5101. Generally, the effective date of an award for compensation which is based on an original claim, a reopened claim, or a claim for increase, "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. However, section 5110(g) provides an exception to section 5110(a):

Subject to the provisions of section 5101 of this title, where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. *In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.*

38 U.S.C. § 5110(g) (emphasis added). The relevant regulation states in pertinent part:

(a) *Effective date of award.* Where pension, compensation, or dependency and indemnity compensation is awarded or increased pursuant to a liberalizing law, or a liberalizing VA issue approved by the Secretary or by the Secretary's direction, the effective date of such award or increase shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the act or administrative issue. In order to be eligible for a retroactive payment under the provisions of this paragraph the evidence must show that the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing law or VA issue and that such eligibility existed continuously from that date to the date of claim or administrative determination of entitlement. . . .

. . . .

(3) If a claim is reviewed at the request of the claimant more than 1 year after the effective date of the law or VA issue, benefits may be authorized for a period of 1 year prior to the date of receipt of such request.

38 C.F.R. § 3.114(a) and (3).

### B. History of Relevant Provisions

Dermatofibrosarcoma protuberance is a form of soft tissue sarcoma. 38 C.F.R. § 3.309(e) (1994). The Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub.L. No. 98–542, 98 Stat. 2725 (Oct. 14, 1984) (found at 38 U.S.C. § 1154 note) [hereinafter 1984 Act] stated that soft tissue sarcoma is associated with exposure to certain levels of dioxin. 1984 Act, § 2(5). The Agent Orange Act of 1991, Pub.L. No. 102–4 (codified at 38 U.S.C. § 1116, as amended) [hereinafter 1991 Act], deleted language regarding certain diseases and disorders included in the 1984 Act. The 1991 Act deleted provisions of the 1984 Act which included diseases such as porphyria cutanea tarda, and provisions which authorized the Secretary of VA to establish a list of dioxin-associated conditions and instead provided that the Secretary would cooperate with the National Academy of Sciences in reviewing medical

evidence indicating which conditions are attributable to exposure to herbicide agents. However, soft tissue sarcoma which manifested to a degree of 10% or more, "other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma," in a veteran who served on active duty in the Republic of Vietnam during the Vietnam era was not excluded. 38 U.S.C. § 1116(a)(1)(A) and (a)(2)(B).

The Secretary promulgated regulations at 38 C.F.R. § 3.311a, corresponding to both Acts, first issued on August 26, 1985. These regulations specifically stated that soft tissue sarcomas were not in the category of diseases associated with dioxin exposure because "sound scientific and medical evidence does not establish a cause and effect relationship between dioxin exposure" and soft tissue sarcomas. 38 C.F.R. § 3.311a (d)(2) (1991). On October 15, 1991, the Secretary amended his regulation, effective retroactively to September 25, 1985, to add as a presumed service-connected condition soft tissue sarcomas manifested anytime after service, based on exposure to herbicides containing dioxin. 38 C.F.R. § 3.311a (c)(2) (1992). The term soft tissue sarcoma was defined to include twenty different types of sarcomas. *Ibid.* On February 3, 1994, section 3.311a was deleted in its entirety and its text transferred to 38 C.F.R. § 3.309(e), which continued to include soft tissue sarcoma including dermatofibrosarcoma protuberance as a disease subject to presumptive service connection associated with exposure to certain herbicide agents, but made subject to the requirements of 38 C.F.R. § 3.307(a)(6) and (d). 38 C.F.R. § 3.309(e) (1994).

C. Application of the Eligibility Criteria Provision of 38 C.F.R. § 3.114(a)

█ The appellant has maintained that, under the first clause of section 5110(g) of Title 38, U.S.Code, he should receive an effective date of June 1987. Appellant's Reply Brief (Br.) at 5. He argues that what the Secretary considers as the limiting second clause in section 5110(g) should be read to mean "the date as of which the administrative process ultimately determines a veteran became entitled to benefits." *Ibid.* The appellant also asserts that equitable tolling

should be applied to grant him an earlier effective date. Appellant's Br. at 10–13.

The Secretary contends that the appellant's arguments for an earlier effective date are without merit because he did not submit an application for compensation until May 1990 and that the BVA decision is not clearly erroneous. Secretary's Br. at 5–9. The Secretary also argues that "because Appellant had not been diagnosed with his disorder until 1987, he did not meet 'all the eligibility criteria for the liberalized benefit on the effective date' of the administrative issue." Secretary's Br. at 6.

Section 5110(g) of title 38 is a permissive statute which does not require VA to make a retroactive award for a period of one year prior to the date of the appellant's claim, regardless of whether the appellant met the criteria for an award of benefits when the new law was enacted or became effective. The plain language of section 5110(g) prohibits a retroactive award prior to the effective date of the legislation and prohibits a retroactive award for more than one year from the date of a veteran's application or the date of the administrative determination of entitlement, whichever may be earlier. In 38 C.F.R. § 3.114(a), the Secretary set forth the requirements for obtaining a retroactive award of a liberalized benefit. However, both the statute and the regulation are silent as to a case of a liberalizing law with a retroactive effective date.

Nevertheless, the requirement, pursuant to section 3.114(a), that a claimant have met all eligibility criteria on the effective date of the liberalizing law or administrative issue, and continuously from that date to the date of the claim, is not a permissible construction of 38 U.S.C. § 5110(g) where a liberalizing law has a retroactive effective date. As the Secretary noted in the motion for reconsideration, the intent of section 5110(g) was to provide a one-year grace period, such as that allowed after discharge or death, for potential beneficiaries who would otherwise be penalized by not filing promptly. *See* Secretary's Motion at 7–8. The Court notes that the Secretary's application of the regulation fulfills this intent when the liberalizing law is prospective. *See Gold v. Brown,* 7 Vet.App.

315 (1995). Thus, where a law is enacted in 1991, and is effective from that date, a claimant filing in 1992 will receive a one-year retroactive award only if he met the eligibility criteria as of 1991. However, the regulation may not be interpreted as allowing a grace period if eligibility criteria are required to be met from a retroactive effective date. The purpose of a grace period here is to give claimants time to react after a change in the law.

In the case at bar, the Board denied retroactive benefits simply because 38 C.F.R. § 3.311a, which was promulgated in 1991, happened to have a retroactive effective date of 1985, rather than 1987 when the appellant was diagnosed with the soft tissue sarcoma. By contrast, a veteran whose cancer was diagnosed in 1985 and who filed a claim at the same time as the appellant, in 1990, would receive a one-year retroactive benefit from the date of the claim under the Secretary's interpretation of section 3.114(a). In this case, the law did not change until the regulation was promulgated in 1991, despite assignment of the 1985 effective date. The appellant filed his claim before the law changed. Application of the eligibility criteria provision of section 3.114(a) in a case such as this where a law has a retroactive effective date does not give effect to Congress' intent to provide a grace period for filing claims. It is error for VA to conclude that continued eligibility under section 3.114(a) must be shown from the effective date of a liberalizing law or regulation, even when that effective date is retroactive, because it would result in unequal treatment of claimants and is not a permissible construction of section 5110(g).

### D. Entitlement to More Favorable Interpretation

The appellant argues that the Secretary has not always interpreted the regulation, section 3.114, as he currently does. In *Viglas v. Brown*, 7 Vet.App. 1 (1994), the Court affirmed the Board's determination granting a one-year retroactive award. In *Viglas*, the liberalizing regulation, 38 C.F.R. § 3.313 (1994) which provides presumptive service connection for Vietnam veterans who developed non-Hodgkin's lymphoma, had a retro-

active effective date of August 5, 1964, the beginning date of the Vietnam era. Although it was impossible for the appellant in *Viglas* to have met the eligibility criteria of section 3.313 in 1964, the Board granted a retroactive award under section 3.114(a). The Board's interpretation of section 3.114(a) in *Viglas* is inconsistent with its interpretation in this case. This contradiction apparently stems from the application of a VA Office of General Counsel Opinion which resulted in a change in VA's interpretation of section 3.114(a). O.G.C.Prec. Op. No. 5–94 (Feb. 18, 1994). In that opinion the General Counsel stated that the eligibility criteria provision of section 3.114(a) applied even where a liberalizing law had a retroactive effective date, and barred any retroactive benefits for non-Hodgkin's lymphoma under section 3.313 because no veteran could meet the eligibility criteria as of the retroactive effective date of 1964. *Id.* at 8–9. The General Counsel's opinion was issued while this case was pending, and was cited in the Board's decision. Thus, even if the Court were to hold that the eligibility criteria provision of section 3.114(a) applied to liberalizing laws with retroactive effective dates, the appellant would still be entitled to the benefit of the more favorable interpretation of section 3.114(a), as applied in *Viglas*. *See Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). The appellant is entitled to receive an award of retroactive benefits with payment beginning on May 24, 1989, one year prior to the date of his May 1990 application for benefits as section 5110(g) allows for an award of benefits effective one year prior to the date of the appellant's application or the date of administrative determination of the entitlement, whichever is earlier. 38 U.S.C. § 5110(g); *Gold*, 7 Vet.App. at 320 (veteran who did not file dependency allowance application until 12 years after he first met the criteria pursuant to a new law could only obtain allowance no earlier than one year prior to date of application); *Viglas*, 7 Vet.App. 1 (section 5110(g) was clearly intended to limit maximum amount of recoverable retroactive benefits to one year prior to the filing of an application). Therefore, the Court concludes that the Board's denial of any and all retroactive benefits was error as a matter of law. *See*

*Pernorio v. Derwinski,* 2 Vet.App. 625, 628 (1992) (Board committed legal error in using a standard that exceeded that found in the regulation); *cf. Hennessey v. Brown,* 7 Vet. App. 143 (1994); *Harder v. Brown,* 5 Vet. App. 183, 189 (1993).

### E. Equitable Relief

■ The appellant alternatively asserts in his pleadings that he should be eligible for an earlier effective date as of June 1987 on equitable grounds because he relied on information provided to Congress and the public by VA that "no causal link [existed] between dioxin exposure and cancer." Appellant's Br. at 10. The Board, in the September 1994 decision, stated that it does not have jurisdiction over the appellant's argument for equitable relief, citing 38 U.S.C. §§ 503, 511, and 7104. *McCay,* BVA 94-——, at 7. The Secretary argues that the appellant's equity argument is "more appropriately addressed by recourse to the Secretary under 38 U.S.C. § 503." Secretary's Br. at 10. Section 503(a) of Title 38, U.S.Code is a permissive statute which gives the Secretary the authority to provide equitable relief when he determines that benefits administered by VA were not provided because of an administrative error. 38 U.S.C. § 503(a). This Court has held that authority to award equitable relief under section 503(a) is committed to the discretion of the Secretary, and that the BVA and this Court are without jurisdiction to review the Secretary's exercise of that discretion. *Suttmann v. Brown,* 5 Vet.App. 127, 138 (1993); *Darrow v. Derwinski,* 2 Vet.App. 303, 306 (1992).

### III. CONCLUSION

For the reasons stated above, the September 27, 1994, decision of the BVA is erroneous as a matter of law and is REVERSED. The matter is remanded for an award of benefits retroactive to May 24, 1989.